UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**NICOLE FRIED,** in her official
capacity as the Commissioner of Agriculture,
**VERA COOPER, NICOLE HANSELL**
**and NEILL FRANKLIN,**

                 Plaintiffs,                             **CASE NO:**

v.

**MERRICK GARLAND**, in his official
capacity as Attorney General of the United
States; **MARVIN RICHARDSON**, in his
official capacity as Acting Director of the
Bureau of Alcohol, Tobacco, Firearms, and
Explosives; and **THE UNITED STATES**
**OF AMERICA,**

                 Defendants.

_____/

## **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

COMES NOW, Plaintiffs, Nicole Fried ("Commissioner Fried"), in her

official capacity as the agency head of the Florida Department of Agriculture and

Consumer Services Commissioner ("FDACS"), Vera Cooper ("Cooper"), Nicole

Hansell ("Hansell"), and Neill Franklin ("Franklin") (collectively, "Plaintiffs"), and

file this Complaint for Declaratory and Injunctive Relief against Defendants Merrick

Garland, in his official capacity as Attorney General of the United States ("Attorney

General Garland"), Marvin Richardson, in his official capacity as Acting Director of

the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("Director Richardson"),

and the United States of America ("United States") (collectively, "Defendants"), and

alleges as follows:

## Introduction

1.      As Supreme Court Justice Clarence Thomas recently noted, the United

States' current policies regarding marijuana amount to:

> "a half-in, half-out regime that simultaneously tolerates and forbids
> local use of marijuana. This contradictory and unstable state of affairs
> strains basic principles of federalism and conceals traps for the
> unwary."
>
> *Standing Akimbo, LLC v. U.S.*, 141 S. Ct. 2236, 2236-2237 (2021)
> (Thomas, C., respecting the denial of certiorari).

2.      The United States' "current approach to marijuana bears little

resemblance to the watertight nationwide prohibition" which it previously enforced.

*Id.* at 2238. Justice Thomas deemed this current approach to be "more episodic than

coherent." *Id.*

3.      In her official capacity, Commissioner Fried understands how essential

it is for government entities to ensure that their regulations are rational, consistent,

and coherent. FDACS regulates numerous areas of significant importance to

Floridians. FDACS' jurisdiction includes essential matters such as food safety,

agricultural water policy, consumer protection matters, and more.

4.     Further, Commissioner Fried regulates and oversees, in her official capacity, Florida laws and programs relating to medical marijuana and firearms. In each of these areas, Commissioner Fried and FDACS work to ensure that Florida law is given full effect and that the rights of Floridians are preserved.

5.     However, the Defendants' irrational, inconsistent, and incoherent federal marijuana policy undermines Florida's medical marijuana and firearms laws and prevents Commissioner Fried from ensuring that Floridians receive the state rights relating to them. As will be detailed below, Sections 922(d)(3) and 922(g)(3) of the Federal Criminal Code (collectively, the "Challenged Sections") forbid Floridians from possessing or purchasing a firearm on the sole basis that they are state-law-abiding medical marijuana patients. The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") has expressly promulgated this interpretation of the Challenged Sections through 27 C.F.R. § 478.11 and ATF Form 4473 (collectively, the "Challenged Regulations).

6.     Qualifying patients such as Cooper and Hansell may legally participate in Florida's medical marijuana program in accordance with the Florida Constitution and state statute. However, solely due to this state-legal use of medical marijuana, the Defendants, the Challenged Sections, and Challenged Regulations deem them too dangerous to exercise their Second Amendment rights. This deprivation of

Cooper and Hansell's Constitutional rights does not survive any level of appropriate legal scrutiny.

7.      For much of the same reason, the Challenge Sections and Challenged Regulations prevent the implementation of Florida's medical marijuana program in violation of the Consolidated Appropriations Act, 2022, § 531 (attached as Exhibit A). This proviso is often referred to as the "Rohrabacher-Farr Amendment." As will be discussed below, Congress has expressly forbid Attorney General Garland and Director Richardson from expending any funds for that purpose or with that effect.[1] This embodies the contradictory nature of the United States' marijuana policy and the "traps for the unwary" that Justice Thomas warned of.

8.      Qualifying patients such as Franklin, who refuse to participate in Florida's medical marijuana program on the sole basis that they are unwilling to concede their Second Amendment rights, embody this violation. By punishing Floridians for actions that fully comply with Florida's medical marijuana laws, the Defendants are violating the Rohrabacher-Farr Amendment. *See United States v, McIntosh*, 833 F. 3d 1163 (9th Cir. 2016).

9.      The Plaintiffs do not challenge the United States' right to enact reasonable gun regulations (such as others throughout section 922) that protect the public. *See U.S. v. Chovan*, 735 F. 3d 1127 (9th Cir. 2013) (upholding the restriction

[1]

4

against those convicted of domestic violence offenses possessing firearms). In fact, the Plaintiffs are all strong advocates for reasonable gun regulations that keep firearms out of the hands of those who cannot safely possess them.

10.     However, the Challenged Sections and Challenged Regulations are unconstitutional as applied to Florida medical marijuana patients. Those provisions, as applied to state-law-abiding medical marijuana patients, such as Cooper and Hansell, and those reasonably seeking to participate in the state medical marijuana program, such as Franklin, offer no protection to the public. They also place an inappropriate and severe burden on the constitutional rights of those affected.

11.     The Plaintiffs are aware that *Wilson v. Lynch* and its progeny have previously upheld one of the Challenged Sections[2] and the Challenged Regulations in response to challenges that may appear similar to this one at first blush. 835 F. 3d 1083 (9th Cir. 2016).

12.     As will be discussed below, *Wilson* was based on a thin and stale factual record which was found to suggest a "significant link between drug use, including marijuana use, and violence." *Id.* at 1093. The Plaintiffs will show that *Wilson* is distinguishable based on differences present on the face of this Complaint and on

---

[2] *Wilson* held that the plaintiff in that case did not have standing to challenge Section 922(g)(3) and thus dismissed the portions of the complaint dealing with it on that basis. The Plaintiffs, however, for the reasons stated below, have standing to challenge that provision.

pertinent evidence to be offered. Alternatively, the Plaintiffs will show through evidence that the stated factual basis for *Wilson* and its progeny, at least as it relates to state-law-abiding medical marijuana patients, is obsolete and without scientific support.

13.     *Wilson* correctly held that the Challenged Sections and Challenged Regulations "directly burden" a medical marijuana patient's "core Second Amendment right to possess a firearm." *Id.* at 1092. Therefore, the relevant question in this matter is whether the physical and/or psychological effects of medical marijuana on a state-law-abiding patient render them sufficiently dangerous or violent for the application of the Challenged Sections and the Challenged Regulations to survive heightened scrutiny. As has and will be alleged and as will be shown through evidence, they do not. Therefore, those provisions are unconstitutional as applied to such patients.

14.     Further, the Plaintiffs allege that the Challenged Sections and the Challenged Regulations violate the Rohrabacher-Farr Amendment. Much like in *McIntosh*, the Challenged Sections and Challenged Regulations impermissibly punish Florida medical marijuana patients who have fully complied with state law. Such punishment of individuals prevents the implementation of a state medical marijuana program. This issue was not raised or considered in *Wilson*.

15.     Therefore, in order to stop these ongoing violations of the Second Amendment and/or the Rohrabacher-Farr Amendment, the Plaintiffs seek a judgment from this Court (a) declaring that the Challenged Sections and the Challenged Regulations violate the Second Amendment as applied to state-law-abiding medical marijuana patients and those reasonably intending to participate in the state medical marijuana program, and (b) enjoining the Defendants from enforcing the Challenged Sections and the Challenged Regulations as applied to state medical marijuana patients, and/or, in the alternative, (c) declaring that the Challenged Sections and the Challenged Regulations prevent the implementation of Florida's medical marijuana program in violation of the Rohrabacher-Farr Amendment, and (d) enjoining the Defendants from expending any federal funds to defend or enforce the Challenged Sections and the Challenged Regulations on that basis.

## Jurisdiction and Venue

16.     The subject matter of this case is within the original and exclusive jurisdiction of the federal courts of the United States. Specifically, the Plaintiffs seek relief pursuant to 28 U.S.C. §§ 1983, 2201, 2202, and 2412. Therefore, this case presents a federal question pursuant to 28 U.S.C. § 1331 and this Court has jurisdiction.

17.     FDACS, which Commissioner Fried leads in her official capacity, is headquartered in Tallahassee. Further, Cooper is a resident of Milton, Florida, which is within the Northern District. Hansell is a resident of Miami, Florida. Franklin is a resident of Fort Myers, Florida. The actions described in paragraph 24 below, which give rise to Cooper's challenge, also occurred within this judicial district. Therefore, venue is proper in this district pursuant to 28. U.S.C. § 1391(e).

### Parties

18.     Commissioner Fried is a natural person and a citizen of the United States and of the State of Florida. As stated previously, FDACS, which Commissioner Fried leads in her official capacity, is an agency of the State of Florida. FDACS is the state agency responsible for, amongst other matters, the issuance of licenses permitting eligible Floridians to engage in the concealed carry of weapons and firearms. *See* § 790.06(1), Fla. Stat.

19.     Nothing in Florida law precludes a medical marijuana patient from obtaining a concealed weapon or firearm license. *See* § 790.06(2), Fla. Stat. Further, nothing in Florida law prevents a medical marijuana patient from purchasing or possessing a firearm.

20.     Further, FDACS regulates multiple aspects of Florida's medical marijuana program.[3] An applicant for a Medical Marijuana Treatment Center ("MMTC") license must possess, amongst other things, a "valid certificate of registration issued by [FDACS]." *See* § 381.986(8)(b)2, Fla. Stat. An MMTC also must follow the horticultural and agricultural practices spelled out in Chapter 581, which is under FDACS' authority.[4] *See* § 381.986(8)(e)6.c and d; § 581.035, Fla. Stat. Further, an MMTC must apply to FDACS for an Edibles Food Establishment Permit in order to sell medical marijuana in edible form. *See* § 381.986(8)(e)8; 500.12, Fla. State; Rule 5K-11.002, Florida Administrative Code. Beyond that, all consumer complaint relating to Florida's medical marijuana industry are directed to FDACS.[5]

21.     In her official capacity, Fried works diligently in these areas to ensure that the laws under her jurisdiction are given full effect. This includes ensuring that safe and eligible Floridians are able to obtain a concealed weapon or firearm license

---

[3] As a general matter, Commissioner Fried, in her official capacity, has "supervision of matters pertaining to agriculture except as otherwise provided by law." Fla. Const., Art. IV, § (4)(d)

[4] Florida MMTC's are required by state law to be vertically integrated, meaning they must all grow their own medical marijuana, as well as processing and selling it.

[5] *See* https://www.fdacs.gov/Cannabis-Hemp/Medical-Marijuana/For-Consumers/Report-Your-Concerns-About-Medical-Marijuana

and that qualified Florida patients may avail themselves of a safe and regulated medical marijuana program.

22.     Cooper is a Florida resident and a qualified, state-law-abiding medical marijuana patient. She takes and has taken medical marijuana in strict compliance with the state's medical marijuana laws.

23.     Cooper is a widow whose late husband owned firearms for their family's personal protection while they resided together. Currently, Cooper runs her family's small business. Cooper wishes to purchase a firearm for her personal protection both inside and outside of her home.

24.     Cooper attempted to exercise her Second Amendment rights by purchasing a firearm on March 15, 2022. She went to a gun store in Milton, Florida, but the store denied her purchase based upon ATF Form 4473 ("Form") (see Exhibit B, attached), which is one of the Challenged Regulations. Specifically, Cooper answered "yes" in response to Question 11(e) on the Form, which states, "Are you an unlawful user of, or addicted to, marijuana…or any other controlled substance?" The Form goes on to state that such marijuana use "remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where" the perspective purchaser resides. *Id.*[6]

---

[6] Although some states have decriminalized marijuana for all users and not just those deemed medically qualified, Florida has not. Therefore, this challenge relates only

25.     Hansell is Florida resident and a qualified, state-law-abiding medical marijuana patient. She is also a veteran of the United States Army who served honorably in Afghanistan and elsewhere. During her time in service, she suffered physical injuries resulting from jumping out of helicopters, as well as Post Traumatic Stress Disorder. Hansell uses medical marijuana to successfully treat these issues.

26.     Hansell wishes to possess a firearm for personal protection in her home and elsewhere.

27.     Hansell attempted to exercise her Second Amendment rights by purchasing a firearm on March 15, 2022. She went to a gun store in Miami, Florida, but the store denied that purchase based upon her response to Question 11(e) on the Form that she is an "unlawful user" of medical marijuana.

28.     Franklin is a Florida resident, a retired law enforcement officer, and the owner of a firearm. He also meets the criteria of a "qualified retired law enforcement officer," pursuant to 18. U.S.C. § 926C, which grants him federal permission to carry a concealed firearm.

29.     Franklin consulted with a qualifying physician permitted to prescribed medical marijuana pursuant to Florida law, on March 16, 2022. The qualifying physician determined that Franklin qualifies to receive medical marijuana pursuant

to the Challenged Sections and Challenged Regulations' application to medical marijuana patients.

to Florida law based on a qualifying medical condition. However, Franklin will not participate in Florida's medical marijuana program on the sole basis that he does not want to lose his Second Amendment right to possess or purchase a firearm.

30.    Attorney General Garland heads the Department. In his official capacity, he is responsible for executing and administering the laws of the United States, including the Challenged Sections. The Rohrabacher-Farr Amendment serves as a restriction on funds appropriated to Attorney General Garland and the Department.

31.    ATF is housed within the jurisdiction of Attorney General Garland and the Department. ATF's jurisdiction, according to its website, is focused on "protect[ing] our communities from violent criminals, criminal organizations, the illegal use and trafficking of firearms, the illegal use and storage of explosives, acts of arson and bombings, acts of terrorism, and the illegal diversion of alcohol and tobacco products."

32.    Director Richardson, in his official capacity, is responsible for executing and administering the ATF's efforts. This includes the enforcement and promulgation of the Challenged Regulations. Further, as ATF falls within the Department, the Rohrabacher-Farr Amendment restricts funds appropriated to Director Richardson and ABT.

33.     The United States is a proper Defendant in this action pursuant to 5 U.S.C. § 702.

## Statement of Facts

### The Challenged Sections and the Challenged Regulations

34.     Section 922(d)(3) of the Federal Criminal Code makes it unlawful to "sell or otherwise dispose of any firearm or ammunition to any person" who is an "unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))."[7]

35.     ATF has adopted regulations which specifically define "controlled substance" as including marijuana. 27 C.F.R. § 478.11. Those regulations also define "unlawful user of or addicted to any controlled substance" as:

> A person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance; and any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician. Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct. A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise

---

[7] Pursuant to section 922(d), indictment for or conviction of a federal crime does not always lead to the loss of a person's Second Amendment Rights. Specifically, only those facing or convicted of a crime "punishable by imprisonment for a term exceeding one year" face such repercussions. *See* Section 922(d)(1). Accordingly, the federal illegality of marijuana is not, in and of itself, a basis for the loss of a person's gun rights. There are other federal crimes of at least sometimes similar magnitude (i.e., those punishable by less than a year imprisonment) which do not carry this consequence.

time the person seeks to acquire a firearm or receives or possesses a firearm. An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time, e.g., a conviction for use or possession of a controlled substance within the past year; multiple arrests for such offenses within the past 5 years if the most recent arrest occurred within the past year; or persons found through a drug test to use a controlled substance unlawfully, provided that the test was administered within the past year. For a current or former member of the Armed Forces, an inference of current use may be drawn from recent disciplinary or other administrative action based on confirmed drug use, e.g., court-martial conviction, nonjudicial punishment, or an administrative discharge based on drug use or drug rehabilitation failure.[8]

(emphasis added)

36.    Section 922(g)(3) of the Federal Criminal Code prohibits any such "unlawful user" from possessing or receiving "any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

37.    Stemming from these prohibitions, ATF has promulgated the Form. As previously stated, anyone seeking to legally purchase a firearm must complete this form and any self-identifying "unlawful user" of medical marijuana must be denied.

---

[8] Although this provision refers to controlled substances that are "prescribed by a licensed physician," Florida physicians do not actually "prescribe" medical marijuana. Instead, they determine whether the person consulting with them meets the state definition of a qualified patient and, if so, the physician may recommend the use of medical marijuana for their qualifying medical condition.

38.     As the Form and 27 C.F.R. § 478.11 make clear, the Defendants promulgated interpretation of "unlawful user" includes state-law-abiding medical marijuana patients.

Florida's medical marijuana program

39.     In November 2016, the citizens of Florida adopted what is now Article X, Section 29 of the Florida Constitution. That section of the state constitution provides that the "medical use of marijuana by a qualifying patient or caregiver in compliance with this section is not subject to criminal or civil liability or sanctions under Florida law." Art. X, § 29(a)(1).

40.     A Florida "qualifying patient" is defined as "a person who has been diagnosed to have a debilitating medical condition, who has a physician certification and a valid qualifying patient identification card..." Art. X, § 29(a)(10), *see also* Section 381.986(1)(l), Florida Statutes (equivalent definition for "qualified patient").

41.     Pursuant to Florida's Office of Medical Marijuana Use's April 1, 2022, weekly update (attached as Exhibit C), there were 702,081 qualified patients in Florida as of that date. Cooper and Hansell are two of those qualified patients.

During the period from March 25 through March 31, 2022, Florida licensees dispensed 270,724,530 milligrams of medical marijuana throughout in the state. *Id.*[9]

<u>Statistics and studies regarding medical marijuana and violent crime</u>

42.     In 2013, the Office of National Drug Control Policy, which is located within the Executive Office of the President of the United States, commissioned a study from the RAND Drug Policy Research Center regarding drug-related crime. That study was published in October 2013, approximately three years before the *Wilson* decision was issued. A copy of that study is attached as Exhibit D.

43.     That study concluded that there was "little support for a contemporaneous, causal relationship between" the use of marijuana "and either violent or property crime." *See Exhibit D, pgs. IV, 9.* The study goes on to conclude that, among other determinations, "marijuana use does not induce violent crime." *Id,*

---

[9] As will be discussed below, this growth in Florida's medical marijuana program without an accompanying increase in violent crime discounts the argument that the use of medical marijuana, in and of itself, makes state-law-abiding patients more violent. This number of patients does not, however, contradict the Plaintiffs' arguments relating to the Rohrabacher-Farr Amendment. As will be discussed further, punishment of individuals is sufficient to show a violation of that provision. Further, as the First Circuit has noted, "no matter the risks, there would likely be some participants in [a state's] medical marijuana market. After all, there have always been participants in the market for unlawful drugs who are undeterred by even life sentences." *U.S. v. Bilodeau*, 24 F. 4th 705, 714 (1st Cir. 2022). Accordingly, the legally pertinent question is not whether the Defendants' actions have prevented anyone from participating in the program, but rather whether they would "skew a potential participant's incentives against entering the market" and "deter the degree of participation in [the state's] market that [it] seeks to achieve." *Id.*

*p. 109.* As this study notes, other research papers have made similar findings. *Id.,*

*pgs. 105-106.*

44.     The United States and the Department did not cite or acknowledge this

study in *Wilson* or its progeny. In fact, in *Wilson,* the United States and the

Department did not submit any studies or other evidence in the record relating to an

alleged link between marijuana use and violence. 835 F. 3d at 1093. Instead, they

simply relied upon prior cases that cited such studies. *Id.; see U.S. v. Carter,* 750

F.3d 462 (4th Cir. 2014); *U.S. v. Yancey*, 621 F.3d 681, 686 (7th Cir. 2010)[10]. The

*Wilson* Court noted that it would have been "helpful for the Government to provide

the studies in this case" and that the Court had "no occasion to evaluate the reliability

of the studies and surveys." 835 F. 3d at 1093. However, the plaintiff in that case did

not challenge the methodology or results of those previously cited studies.[11] *Id.*

45.     The RAND study also reaches the common-sense conclusion that "the

hard drug trade and the firearms that protect it, rather than drug use *per se*, are

responsible for most of the systemic crime related to drugs." *See Ex. D, pg. 109.* The

illegal drug market is highly associated with violent crimes such as robberies,

---

[10] Both of those cases dealt with the constitutionality of preventing illegal marijuana users (pursuant to both state and federal law) from possessing firearms.

[11] The Plaintiffs challenge the methodology and reliability of those studies. At a minimum, they allege that the conclusions reached in those studies are outdated or, in the alternative, are inapplicable to state medical marijuana patients.

causing many engaged within it to have to arm themselves or otherwise engage in dangerous activity. *See United States v. Thompson*, 842 F. 3d 1002, 1009 (7th Cir. 2016) (noting that "guns are known tools of the drug trade…").

46.     However, Florida medical marijuana patients do not face these risks. They may safely purchase medical marijuana from a store much like any legal medication without facing or engaging in the dangerous actions that at least some illegal marijuana users must. There is nothing in *Wilson* or its progeny to suggest that the Defendants and/or their predecessors have ever acknowledged this significant distinction in defending the Challenged Sections and/or the Challenged Regulations. Instead, the Defendants have improperly conflated the illegal drug trade's ancillary violence and dangers with safe, state-legal, and federally-protected medical marijuana programs.

47.     Since Florida implemented its medical marijuana program, relevant violent crime statistics have borne out the RAND study's conclusion that there is no apparent causal link between marijuana use *per se* and violent crime. From 2016 (when Florida patients began receiving medical marijuana) to 2019, Florida's violent crime rate compared to that of the United States as follows:

|  | United States[12] | Florida[13] |
|---|---|---|
| 2016: | 5.3 percent increase from the previous year | 1.9 percent decrease from the previous year |
| 2017: | .8 percent decrease | 3.4 percent decrease |
| 2018: | 4.3 percent decrease | 4.2 percent decrease |
| 2019: | 3.1 percent decrease | 1 percent decrease[14] |

48.     Therefore, in at least three of those four years, Florida experienced a larger or statistically equivalent drop in violent crime rates compared to the nation as a whole. Similarly, researchers have found that Colorado and Washington did not experience any long-term increase in their violent crime rates after legalizing medical marijuana. *See* Ruibin Lu, Dale Willits, Mary K. Stohr, David Makin, John Snyder, Nicholas Lovrich, Mikala Meize, Duane Stanton, Guangzhen Wu & Craig Hemmens (2019) *The Cannabis Effect on Crime: Time-Series Analysis of Crime in Colorado and Washington State*, Justice Quarterly.

---

[12] *See* 2019 Preliminary Semi-Annual Uniform Crime Report, January-June 2019, United States Department of Justice, Federal Bureau of Investigations, Criminal Justice Information Services Division; Table 3: Percentage Change for Consecutive Years (attached as Exhibit E). This appears to be the most recent such report from the Department.

[13] *See* Crime in Florida Abstract Report, January-December 2019, Florida Department of Law Enforcement (attached as Exhibit F)

[14] As the titles of these reports show, the 2019 data for the United States runs only through June 2019, while the data for Florida runs through December 2019. Therefore, these numbers do not present an apples-to-apples comparison. They do show, however, that, even if it turns out that Florida's drop in violent crime in 2019 lagged behind the nation at large, the state still experienced a statistical reduction in such crime during that year.

49.     If the Defendants were correct that medical marijuana use led to increased violent behavior, then it would be reasonable to expect that pertinent violent crime statistics would bear that out. However, as these facts and evidence to be elicited at trial will show, they do not.

50.     The RAND study, the lack of ancillary and associated violence in the medical marijuana market, and the fact that increased violence has not occurred as medical marijuana has become more prevalent all strongly differentiate this challenge from *Wilson*. In fact, the factual basis for *Wilson* was completely based upon *Carter* and *Yancey*, which dealt with the state-and-federally-illegal drug trade, not patients in full compliance with a state medical marijuana program. The Plaintiffs intend to present what was not offered in *Wilson*: a full opportunity for the Court to examine the current factual and scientific basis for the Defendants' deprivation of this constitutional right.

<u>The Rohrabacher-Farr Amendment</u>

51.     The Rohrabacher-Farr Amendment precludes Attorney General Garland, Director Richardson, and/or their predecessors, in their official capacities, from using any Department funds "to prevent [Florida and other states with medical marijuana programs] from implementing state laws that authorize the use, distribution, possession or cultivation of medical marijuana." *See Ex. A*. This language has been part of every federal budget since 2014.

52.    This provision applies to more than just federal enforcement actions against a state itself. Rather, *McIntosh* held that this amendment "prohibits [the Department] from spending funds from relevant appropriations acts for the prosecution of **individuals** who engaged in conduct permitted by" state medical marijuana laws "and who fully complied with such laws." 833 F. 3d. at 1176-1177. (emphasis added); *see also Bilodeau*, 24 F. 4th at 713 ("We agree with this reading of the rider and conclude, as the Ninth Circuit did, that the [Department] may not spend funds to bring prosecutions if doing so prevents a state from giving practical effect to its medical marijuana laws.")

53.    Further, *McIntosh* made clear that Rohrabacher-Farr precludes prosecution of individuals "**at a minimum**." *Id.* at 1177. (emphasis added).

54.    Attorney General Garland, Director Richardson, and/or their predecessors, in their official capacities, are expending and have expended federal funds to promulgate and enforce the Challenged Sections and the Challenged Regulations.

55.    The Challenged Sections and Challenged Regulations punish Florida state-law-abiding medical marijuana patients by depriving them of their Second Amendment rights. They also serve to preclude potential qualified potential patients such as Franklin from participating in the state medical marijuana program because the use of such state-permitted medication would cost them their Second

21

Amendment rights. In those ways, these provisions prevent the implementation of Florida's medical marijuana program in much the same way as the attempted prosecution in *McIntosh.*

Basis for Plaintiffs' Claims

56.     Pursuant to Article III of the United State Constitution, to have standing, a plaintiff must demonstrate: (i) an injury in fact that is both concrete and particularized as well as actual or imminent; (ii) an injury that is traceable to the conduct complained of; and (iii) an injury that is redressable by a decision of the court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *State ex rel. Sullivan v. Lujan,* 969 F.2d 877, 880 (10th Cir.1992).

57.     States and agencies such as FDACS are considered to be a special class of federal litigants. *Wyoming ex. rel. Crank v. U.S.*, 539 F. 3d 1236, 1241-1242 (10th Cir. 2008) *citing Massachusetts v. E.P.A.*, 127 S. Ct. 1438, 1454 (2007); *Lacewell v. Office of Comptroller of Currency*, 999 F. 3d 130, 145 (2nd Cir. 2021). Injury in fact has been found for state entities when federal regulations or actions interfere with the "ability to enforce its legal code." *Id.* The last two Article III standing prongs are met when the federal action directly causes this injury and declaratory and/or injunctive relief would prevent that going forward. *Id.*

58.     Commissioner Fried is in need of a declaration of her rights, in her official capacity, regarding the Challenged Sections and Challenged Regulations. Those laws and regulations interfere with FDACS' ability to give effect to laws within its jurisdiction. They render state-law-abiding patients ineligible to purchase or possess a firearm even though Florida law has no such prohibition. In that way, those laws also serve to punish qualified patients solely for their participation in Florida's medical marijuana program. This contradicts Florida law and vitiates at least some of the legal rights and protections the state and FDACS intend to provide for its citizens.

59.     Commissioner Fried, in her official capacity, is of the reasonable belief that the Challenged Sections and Challenged Regulations are unconstitutional as applied to state-law-abiding medical marijuana patients and those reasonably seeking to participate in the state medical marijuana program. It is also her reasonable understanding and belief that the Defendants oppose this position.

60.     Commissioner Fried is also of the reasonable belief that the Challenged Sections and Challenged Regulations violate the Rohrabacher-Farr Amendment on the basis that they prevent the implementation of Florida's medical marijuana program by punishing state-law-abiding patients and precluding those reasonably wishing to participate in the state medical marijuana program from doing so. This interferences prevents Commissioner Fried from giving full effect to the medical

23

marijuana laws under her jurisdiction. It is Commissioner Fried's reasonable understanding and belief, though, that the Defendants oppose this position.

61.    Much like Commissioner Fried, Cooper, and Hansell are of the reasonable belief that the Challenged Sections and the Challenged Regulations are unconstitutional as applied to them and other state-law-abiding medical marijuana patients. Cooper and Hansell are also of the reasonable belief that those provisions punish them for their participation in the state medical marijuana program by effectively vitiating their Second Amendment rights. This punishment amounts to an impermissible interference with Florida's medical marijuana program. It is also their reasonable understanding and belief, however, that the Defendants oppose those positions.

62.    Much like Commissioner Fried, Cooper, and Hansell, Franklin is of the reasonable belief that the Challenged Sections and the Challenged Regulations are unconstitutional as applied to those reasonably intending to become medical marijuana patients. They force him, without any logical or sufficient reason, to choose between participating in this state-legal and federally-protected program and maintaining his Second Amendment rights. He is also of the reasonable belief that those provisions prevent Florida from implementing its medical marijuana program by precluding persons such as himself (i.e., those who value the exercise of their

Second Amendment rights) from participating in that program. It is Franklin's reasonable understanding and belief that the Defendants oppose those positions.

## Claims for Relief

### Count I – Declaratory Relief Related to Second Amendment Violation, 42 U.S.C. § 1983

63.     The Plaintiffs reallege and incorporate by reference paragraphs 1 through 62 as if fully set forth herein.

64.     The Challenged Sections and the Challenged Regulations, as applied, violate and impose an impermissible burden upon the Second Amendment rights of state-law-abiding Florida medical marijuana patients such as Cooper and Hansell. They also place an improper burden on Florida residents such as Franklin who are qualified for and who reasonably and imminently seek to participate in the state medical marijuana program.

65.     As a direct and proximate cause of the application of the Challenged Sections and the Challenged Regulations to medical marijuana patients and those reasonably and imminently intending to inquire about becoming medical marijuana patients, Cooper, Hansell, and Franklin have suffered and continue to suffer irreparable harm stemming from the inability to exercise, or the real and imminent threat of loss of, their Second Amendment rights.

66.     Further, the Challenge Sections and Challenged Regulations serve to punish those who participate in Florida's medical marijuana program in a manner

contrary to Florida law. This precludes Commissioner Fried, in her official capacity, from giving full effect to its laws.

67.     The Eleventh Circuit has articulated a two-step analysis for evaluating Second Amendment claims. *See GeorgiaCarry.org, Inc. v. U.S. Army Corp. of Engineers*, 788 F. 3d 1318, 1322 (11th Cir. 2015). First, courts must "ask if the restricted activity is protected by the Second Amendment…," and then, "if necessary," the court should "apply the appropriate level of scrutiny." *Id.* As *Wilson* correctly determined, the Challenged Sections "directly burden" a medical marijuana patient's "core Second Amendment right to possess a firearm." 835 F. 3d. at 1092. The same is true for the Challenged Regulations.

68.     Although there appears to be some disagreement regarding the precise level or type of scrutiny that should be applied to an alleged Second Amendment violation[15], it is clear that the rational basis standard would not be legally

---

[15] *Heller I* itself does not specify which level of scrutiny should be applied, holding only that the gun regulation at issue would not survive "any of the standards of scrutiny that we have applied to enumerated constitutional rights." 554 U.S. at 628. Multiple federal circuits appear to interpret *Heller I* as deeming intermediate scrutiny to be appropriate for Second Amendment cases. *See Wilson*, 835 F. 3d at 1093; *Heller v. District of Columbia*, 670 F. 3d 1244, 1256-1258 (D.C. Cir. 2011) ("*Heller II*"); *U.S. v. Marzzarella*, 614 F. 3d 85, 97 (3d Cir. 2010). Supreme Court Justice Brett Kavanaugh and other federal judges, however, contend that *Heller I* leaves "little doubt that courts are to assess gun bans and regulations based on text, history, and tradition, not by a balancing test such as strict or intermediate scrutiny." *See e.g. Heller II*, 670 F. 3d at 1271 (Kavanaugh, B., dissenting).

appropriate. *District of Columbia v. Heller*, 554 U.S. 570, 628 n. 27, 128 S. Ct. 570, 171 L. Ed. 2d 637 (2008) ("*Heller I*"). Therefore, at least some level of heightened scrutiny must be applied to such an alleged violation.

69.     In order to survive any level of heightened scrutiny, a law or regulation must, at a minimum, relate to a "significant, substantial, or important" government objective and there must be a "reasonable fit" between that regulation and that objective. *Wilson*, 835 F. 3d at 1093.

70.     The Plaintiffs agree that the Defendants have a significant, substantial, and important objective in trying to keep firearms out of the hands of those who are too dangerous or violent to use them safely. They do not challenge similar sections within Section 922 and/or other regulations with this effect. Further, they do not contest, at least for purposes of this proceeding, the constitutionality of the Challenged Sections and Challenged Regulations as applied to marijuana users who are not in compliance with a state medical marijuana program and who must at least potentially avail themselves of the ancillary violence and dangers present in the illegal drug market.

71.     However, as applied to those who are in full compliance with a state medical marijuana program, the Challenged Sections and Challenged Regulations do not reasonably further the United States' goal in this area. The Defendants cannot reasonably show that such patients are inherently more dangerous due solely to their

state-law-abiding use of medical marijuana, especially in light of the government-procured RAND study and the violent crime statistics cited above. Further, those regulations apply to such patients at the same level and in the same manner as illegal users of marijuana without accounting for the inherent violence associated with the illicit drug trade that is not present for medical marijuana patients. This cannot survive any level of heightened scrutiny.

72.   What Justice Thomas has deemed the Defendants' "half-in, half-out" position on marijuana makes their position even more untenable. Even if the Plaintiffs could take issue with the Defendants' previous bright-line stance on the dangerous effects of marijuana, at least their position was consistent and clear. Today, it is anything but consistent or clear. The Defendants must now justify the continued categorization of state-law-abiding medical marijuana patients as dangerous and violent despite, amongst other actions and statements, Congress' express statement through the Rohrabacher-Farr Amendment that state medical marijuana programs must be legally protected. The Defendants cannot square these positions. The Defendants have continuously undermined and weakened their own reasoning and position in this area since *Wilson* was decided.

73.   The Plaintiffs contend that there exists an actual controversy regarding whether the Challenged Sections and Challenged Regulations are unconstitutional

as applied to Florida medical marijuana patients and those reasonably intending to become Florida medical marijuana patients.

74.    The Plaintiffs possess no other adequate remedy at law through which to resolve these disputes and request a declaratory judgment.

75.    The Plaintiffs have incurred and will incur attorney's fees as a proximate result of having to initiate and prosecute this action.

<u>Count II – Injunctive Relief relating to violation of the Second Amendment 42 U.S.C. § 1983</u>

76.    The Plaintiffs reallege and incorporate by reference paragraphs 1 through 75 as if fully set forth herein.

77.    The Plaintiffs, as pled, have experienced, are experiencing, and will continue to experience irreparable harm for as long as the Challenged Sections and Challenged Regulations continue to have their current as applied effect on state medical marijuana patients and those reasonably seeking to consult with a doctor about becoming a state medical marijuana patient. Further, Commissioner Fried, in her official capacity, will continue to experience irreparable harm for as long as Florida's medical marijuana and firearm laws are federally undermined.

78.    The Plaintiffs have no plain, adequate, or complete remedy to redress the wrongs addressed herein other than this action. An award of monetary damages is not adequate to remedy potential loss of and/or infringement upon Cooper, Hansell, or Franklin's Second Amendment rights. Monetary damages would also not

remedy the undermining of state law affecting Commissioner Fried, in her official capacity.

79.    Accordingly, the Plaintiffs seek an injunction preventing the Defendants from enforcing the Challenged Sections and Challenged Regulations as applied to Floridians who are in compliance with state medical marijuana laws.

80.    Such an injunction will serve the public interest by ensuring that the core constitutional rights of state-law-abiding Floridians are protected and that Commissioner Fried, in her official capacity, can give full effect to state medical marijuana and firearm laws.

81.    The Plaintiffs have incurred and will incur attorney's fees as a proximate result of having to initiate and prosecute this action.

<u>Count III – Declaratory Relief Related to the Rohrabacher-Farr Amendment,</u>
<u>42 U.S.C. § 1983</u>

82.    The Plaintiffs reallege and incorporate by reference paragraphs 1 through 81 as if fully set forth herein.

83.    Much like in *McIntosh*, the Defendants and/or their predecessors' expenditure of funds to promulgate and/or enforce the Challenged Sections and Challenged Regulations serves to punish Florida medical marijuana patients even though they are in full compliance with state law. The Plaintiffs contend that, as in *McIntosh*, this constitutes a violation of the Rohrabacher-Farr Amendment because it prevents the implementation of Florida's medical marijuana program.

30

84.     The Plaintiffs contend that there exists an actual controversy regarding whether the Challenged Sections and Challenged Regulations prevent the implementation of Florida's medical marijuana program in this manner.

85.     The Plaintiffs possess no other adequate remedy at law through which to resolve these disputes and request a declaratory judgment.

86.     The Plaintiffs have incurred and will incur attorney's fees as a proximate result of having to initiate and prosecute this action.

<u>Count IV – Injunctive Relief relating to violation of the Rohrabacher-Farr
Amendment, 42 U.S.C. § 1983</u>

87.     The Plaintiffs reallege and incorporate by reference paragraphs 1 through 86 as if fully set forth herein.

88.     The Plaintiffs, as pled, have experienced, are experiencing, and will continue to experience irreparable harm for as long as the Defendants expend funds to promulgate and/or enforce the Challenged Sections and Challenged Regulations in a manner that serves to punish state-law-abiding Florida medical marijuana patients. In doing so, the Defendants prevent the implementation of Florida's medical marijuana program in violation of the Rohrabacher-Farr Amendment.

89.     The Plaintiffs have no plain, adequate, or complete remedy to redress the wrongs addressed herein other than this action. An award of monetary damages is not adequate to remedy the potential inability for Florida to implement its medical marijuana programs, the Defendants' illegal use of funds to prevent such

implementation, or the continued deprivation of state-law-abiding medical marijuana patients' Second Amendment rights.

90.     Accordingly, the Plaintiffs seek an injunction preventing the Defendants from expending any funds to enforce or apply the Challenged Sections and Challenged Regulations to Floridians who are in compliance with state medical marijuana laws.

91.     Such an injunction will serve the public interest by ensuring that the state's medical marijuana program is implemented and protecting state-law-abiding patients from loss of their constitutional rights.

92.     The Plaintiffs have incurred and will incur attorney's fees as a proximate result of having to initiate and prosecute this action.

## Prayer for Relief

WHEREFORE, the Plaintiffs respectfully request that the Court enter judgment in their favor as follows:

A)     Declare that the Challenged Sections and the Challenged Regulations are unconstitutional as applied to Cooper, Hansell, and other state-law-abiding medical marijuana patients,

B)     Declare that the Challenged Sections and the Challenged Regulations are unconstitutional as applied to Franklin and others reasonably and imminently

seeking to participate in a state medical marijuana program in full compliance with state law,

C)      Permanently enjoin the Defendants from applying or enforcing the Challenged Sections and/or the Challenged Regulations to state-law-abiding medical marijuana patients, and/or, in the alternative,

D)      Declare that the Challenged Sections and the Challenged Regulations, contrary to the Rohrabacher-Farr Amendment, prevent Florida from implementing its medical marijuana program, and

E)      Permanently enjoin the Defendants from expending any funds to enforce or apply the Challenged Sections and the Challenged Regulations against state-law-abiding medical marijuana patients, and

F)      Award the Plaintiffs their reasonable attorney's fees and costs pursuant to 28 U.S.C. § 2412, and

G)      Grant any such other and further relief as the Court deems just and proper.

Respectfully submitted this 20th day of April, 2022.

/s/ William D. Hall
William D. Hall
Florida Bar No. 67936
Daniel R. Russell
Florida Bar No. 63445
Jordane Wong
Florida Bar No. 1030907

33

**DEAN, MEAD & DUNBAR**
106 E. College Ave., Suite 1200
Tallahassee, Florida 32301
Tel: (850) 999-4100
Fax: (850) 577-0095
whall@deanmead.com
drussell@deanmead.com
jwong@deanmead.com
kthompson@deanmead.com
*Attorneys for Plaintiffs*


/s/Adam J. Komisar_____
ADAM J. KOMISAR
Fla. Bar No: 86047
KOMISAR SPICOLA, P.A.
Adam@KomisarSpicola.com
P.O. Box 664
Tallahassee, Florida 32302
Telephone No.:  (850) 328-4447
Fax No.: (850) 320-6592
www.KomisarSpicola.com
*Co-Counsel for Plaintiff Nicole Hansell*


CAMINEZ & YEARY, P.A.

/s/ Ryan A. Yeary_____
Ryan A. Yeary
Florida Bar No.: 71261
Kareem Todman
Florida Bar No. 109295
1307 South Jefferson Street
Monticello, Florida 32344
(850) 997-8181 - Phone
(850) 997-5189 – Facsimile
ryeary@caminezlaw.com
ktodman@caminezlaw.com
service@caminezlaw.com
*Co-Counsel for Plaintiff Neill Franklin*

34

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the <u>20th</u> day of April, 2022, the foregoing has been electronically filed and served by certified mail upon the United States Courthouse, 111 N. Adams Street, Tallahassee, FL 32301, the United States Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530, and the Bureau of Alcohol, Tobacco, Firearms and Explosives, 99 New York Avenue, NE, Washington, DC 20226.

/s/ William D. Hall_____
William D. Hall