# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

|  |  |
|---|---|
| NICOLE FRIED, in her official capacity as the Commissioner of Agriculture, VERA COOPER, NICOLE HANSELL, and NEILL FRANKLIN<br><br>Plaintiffs,<br><br>v.<br><br>MERRICK GARLAND, in his official capacity as Attorney General of the United States, STEVEN M. DETTELBACH[1], in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and THE UNITED STATES OF AMERICA,<br><br>Defendants. | No. 4:22-cv-00164-AW-MAF |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS FIRST AMENDED COMPLAINT
## OR ALTERNATIVELY FOR SUMMARY JUDGMENT

---

[1] The First Amended Complaint named as a Defendant Gary M. Restaino, in his official capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF).  Steven M. Dettelbach became Director of ATF on July 13, 2022.  Pursuant to Fed. R. Civ. P. 25(d), Mr. Dettelbach is substituted as a Defendant.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

BACKGROUND ................................................................................. 4

    I.    Statutory and Regulatory Background ................................. 4

        A.    Gun Control Act of 1968 .......................................... 4

        B.    Controlled Substances Act ....................................... 6

        C.    Rohrabacher-Farr Amendment ................................. 7

        D.    Florida's Medical Marijuana Laws ............................ 8

    II.    Factual Background ............................................................ 9

        A.    Plaintiffs' Allegations .............................................. 9

        B.    Plaintiffs' Claims .................................................. 10

LEGAL STANDARD ........................................................................ 11

ARGUMENT ................................................................................... 11

    I.    Plaintiffs Lack Standing To Bring Most Of Their Claims ..... 11

        A.    Fried Lacks Standing .............................................. 12

        B.    Franklin Lacks Standing ......................................... 14

        C.    All Plaintiffs Lack Standing To Assert
                Rohrabacher-Farr Amendment Claims ..................... 15

    II.    Plaintiffs' Second Amendment Claims Fail As a Matter of Law
        Because The Challenged Provisions Are Constitutional ........ 16

        A.    Precedent Shows That Plaintiffs' Claims Fail ............. 16

        B.    Disarming Unlawful Drug Users Is Consistent With
                History And Tradition ............................................. 21

        C.    The Challenged Provisions Pass *Bruen*'s Analogical
                Reasoning Test ...................................................... 27

III.   Plaintiffs Fail to State a Claim Under the Rohrabacher-Farr
       Amendment or Section 1983.............................................. 33

       A.   Plaintiffs Fail to State a Claim Under the
            Rohrabacher-Farr Amendment................................. 33

       B.   Plaintiffs Cannot Bring Section 1983 Claims Against
            the Federal Government......................................... 36

CONCLUSION ................................................................... 37

# TABLE OF AUTHORITIES

## Cases

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez,*
  458 U.S. 592 (1982) ......................................................................... 12

*Barrett v. United States,*
  423 U.S. 212 (1976) ............................................................................ 4

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .......................................................................... 11

*Binderup v. Att'y Gen. of the U.S.,*
  836 F.3d 336 (3d Cir. 2016).............................................................. 23

*Bradley v. United States,*
  402 F. Supp. 3d 398 (N.D. Ohio 2019)....................................14, 15, 20

*Carman v. Parsons,*
  789 F.2d 1532 (11th Cir. 1986) ........................................................ 36

*Clapper v. Amnesty International USA,*
  568 U.S. 398 (2013) .......................................................................... 15

*Coastal Wellness Ctrs., Inc. v. Progressive Select Ins. Co.,*
  309 F. Supp. 3d 1216 (S.D. Fla. 2018) ............................................. 29

*Dickerson v. New Banner Inst., Inc.,*
  460 U.S. 103 (1983) ............................................................................ 4

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) ..................................................................*passim*

*Fausnaught v. United States,*
  No. 3:03-CR-00032, 2013 WL 12333443 (M.D. Pa. Mar. 1, 2013)....... 20

*Folajtar v. Att'y Gen. of the U.S.,*
  980 F.3d 897 (3d Cir. 2020).............................................................. 23

*Gibson v. Holder,*
  No. 3:14CV641/MCR/EMT, 2015 WL 5635125
  (N.D. Fla. Aug. 3, 2015) ................................................................... 20

*Gonzales v. Raich*,
545 U.S. 1 (2005)...................................................................... 6, 7, 17

*Gov't of Manitoba v. Bernhardt*,
923 F.3d 173 (D.C. Cir. 2019).......................................................... 13

*Lacewell v. Off. of Comptroller of Currency*,
999 F.3d 130 (2d Cir. 2021)......................................................... 13, 14

*Ladies Mem'l Ass'n, Inc. v. City of Pensacola*,
34 F.4th 988 (11th Cir. 2022).......................................................... 12

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ...................................................................... 12

*Mack v. Alexander*,
575 F.2d 488 (5th Cir. 1978)........................................................... 36

*Massachsetts v. EPA*,
549 U.S. 497 (2007) ...................................................................... 14

*Massachusetts v. Mellon*,
262 U.S. 447 (1923) ...................................................................... 12

*McDonald v. City of Chicago*,
561 U.S. 742 (2010) ...................................................................... 26

*Michigan v. EPA*,
581 F.3d 524 (7th Cir. 2009)........................................................... 13

*MSP Recovery Claims, Series LLC v. Tower Hill Preferred Ins. Co.*,
No. 1:20-CV-262-AW-GRJ, 2021 WL 8533679
(N.D. Fla. July 13, 2021)................................................................. 11

*New York State Rifle & Pistol Association v. Bruen*,
142 S. Ct. 2111 (2022)............................................................*passim*

*Oklahoma v. Biden*,
No. CIV-21-1136-F, 2021 WL 6126230 (W.D. Okla. Dec. 28, 2021).... 13

*Penton v. Centennial Bank*,
No. 4:18-CV-00450-AW-CAS, 2019 WL 6769661
(N.D. Fla. Nov. 22, 2019)................................................................. 11

iv

*Roberge v. United States*,
   No. 1:04-CR-70, 2013 WL 4052926 (E.D. Tenn. Aug. 12, 2013).......... 20

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ..................................................................11-12

*State v. Hogan*,
   58 N.E. 572 (Ohio 1900).................................................................. 25

*State v. Shelby*,
   2 S.W. 468 (Mo. 1886) ............................................................. 26, 32

*United States v. Bilodeau*,
   24 F.4th 705 (1st Cir.)............................................................... 35, 36

*United States v. Campbell*,
   No. 4:18-CR-23, 2020 WL 699821 (E.D. Tenn. Feb. 11, 2020)............ 20

*United States v. Carter*,
   750 F.3d 462 (4th Cir. 2014)..................................................... 19, 31

*United States v. Daniels*,
   --- F. Supp. 3d ---, 2022 WL 2654232
   (S.D. Miss. July 8, 2022).................................................. 3, 20, 21, 32

*United States v. Dugan*,
   657 F.3d 998 (9th Cir. 2011)...................................................... 19, 20

*United States v. Emerson*,
   270 F.3d 203 (5th Cir. 2001)............................................................ 25

*United States v. Emond*,
   No. 2:12-CR-00044-NT, 2012 WL 4964506 (D. Me. Oct. 17, 2012)..... 20

*United States v. Korbe*,
   No. CR. 09-05, 2010 WL 2404394 (W.D. Pa. June 9, 2010) ................ 20

*United States v. May*,
   538 F. App'x 465 (5th Cir. 2013) .................................................... 19

*United States v. McIntosh*,
   833 F.3d 1163 (9th Cir. 2016).................................. 18, 19, 33, 35, 36

*United States v. Moss*,
   No. 18-CR-316 (JCH), 2019 WL 3215960 (D. Conn. July 17, 2019)..... 20

*United States v. Patterson*,
   431 F.3d 832 (5th Cir. 2005)............................................................. 19

*United States v. Richard*,
   350 F. App'x 252 (10th Cir. 2009).............................................. 19, 20

*United States v. Rozier*,
   598 F.3d 768 (11th Cir. 2010)........................................................ 18

*United States v. Seay*,
   620 F.3d 919 (8th Cir. 2010)...................................................... 19, 20

*United States v. Skoien*,
   614 F.3d 638 (7th Cir. 2010)....................................................... 22, 24

*United States v. Squires*,
   440 F.2d 859 (2d Cir. 1971)........................................................... 34

*United States v. Tooley*,
   717 F. Supp. 2d 580 (S.D. W. Va. 2010),
   *aff'd*, 468 F. App'x 357 (4th Cir. 2012) ...................................... 22, 23

*United States v. Vongxay*,
   594 F.3d 1111 (9th Cir. 2010)......................................................... 23

*United States v. Westley*,
   No. 3:17-CR-171 (MPS), 2018 WL 1832912
   (D. Conn. Apr. 17, 2018)................................................................. 20

*United States v. Yancey*,
   621 F.3d 681 (7th Cir. 2010)....................................................*passim*

*Wilson v. Lynch*,
   835 F.3d 1083 (9th Cir. 2016).................................................... 19, 31

*Wyoming ex. rel. Crank v. United States*,
   539 F. 3d 1236 (10th Cir. 2008)................................................ 13, 14

**Statutes**

18 U.S.C. § 922(d)(3) .................................................................*passim*

18 U.S.C. § 922(g) .................................................................... 4

18 U.S.C. § 922(g)(3) .................................................................*passim*

18 U.S.C. § 3282.................................................................... 19

21 U.S.C. § 812 .................................................................... 6

21 U.S.C. § 812(b)(1)(B).................................................................... 1

21 U.S.C. § 844(a).................................................................6, 17

42 U.S.C. § 1983.................................................................... 11, 36

Fla. Stat. § 381.986.................................................................... 8, 9, 28

Consolidated Appropriations Act, 2022, Pub. Law No. 117-103,
    136 Stat. 49 (Mar. 15, 2022) .................................................................... 7

**The Constitution of Florida**

Fla. Const. art. IV.................................................................... 13

Fla. Const. art. X, § 29.................................................................... 8

**Rules**

Fed. R. Civ. P. 12(d).................................................................... 29

**Regulations**

*Definitions for the Categories of Persons Prohibited From Receiving
    Firearms* (95R-051P), 62 Fed. Reg. 34,634 (June 27, 1997).................................................................... 33

Drug Enforcement Administration, *Denial of Petition to Initiate Proceedings
    To Reschedule Marijuana*, 81 Fed. Reg. 53,688 (Aug. 12, 2016).................................................................... 7

27 C.F.R. § 478.11 .................................................................... 5, 17, 28, 34

**Other Authorities**

1 W. & M., ch. 15, § IV, in 3 Eng. Stat. at Large 422 (1689)................... 24

1633 Va. Acts 219, Act X....................................................................... 24

1633 Mass. Acts ch. LVIII .................................................................... 24

1645 Laws of New York 47.................................................................... 24

1763 Laws of Pennsylvania 319............................................................ 24

1878 Miss. Laws 175............................................................................. 26

1881 Fla. Laws 87................................................................................. 25

1883 Kan. Sess. Laws 372..................................................................... 25

1883 Mo. Laws 76................................................................................ 26

1883 Wis. Sess. Laws 290..................................................................... 26

1890 Okla. Sess. Laws 495.................................................................... 26

1899 S.C. Acts 97 ................................................................................ 26

Act XII of Mar. 10, 1655, 1655 Va. Laws 401, 401-02........................... 25

Act of Mar. 14, 1776, ch. VII,
    1775-1776 Mass. Acts 31 ................................................................. 24

Act for the Further Security of the Government, ch. LXI, § 5,
    1777-1778 Pa. Laws 123, 126........................................................... 25

Bernard Laurnon, Cannabis Intoxication & Fatal Road Crashes in France,
    BMJ, 10;31(7529) (2005)................................................................. 31

Bernard Schwartz, 2 *The Bill of Rights: A Documentary History* 662
    (1971)............................................................................................. 22

Brian F. O'Donnell, Decision Making and Impulsivity in Young Adult
    Cannabis Users, Frontiers in Psych., 12:679904 (2021)...................... 30

Carlton F.W. Larson, *Four Exceptions in Search of A Theory:
    District of Columbia v. Heller and Judicial Ipse Dixit,*
    60 Hastings L.J. 1371 (2009)........................................................... 25

Ch. 5 Colonial Laws of New York 244-46 (1894)................................... 25

Christopher Whitlow, Short Communication; Long-Term Heavy Marijuana
   Users Make Costly Decisions on a Gambling Task, 76 (1-2) J. Drug
   Alcohol Depend. 107-11 (2004)........................................................ 30

Daniel J. Fridberg, Cognitive Mechanisms Underlying Risky Decision-
   Making in Chronic Cannabis Users, 54 (1) J. Math Psychol. 28(2010) .. 30

Don B. Kates & Clayton E. Cramer, *Second Amendment Limitations and
   Criminological Considerations*,
   60 Hastings L.J. 1339 (2009)........................................................... 23

Florida Board of Medicine, Medical Marijuana Consent Form, *available at*
   https://flboardofmedicine.gov/forms/medical-marijuana-consent-form.pdf
   (last visited Aug. 3, 2021) .................................................... 3, 9, 29, 32

Jon Grant, Short Communication; Neuropsychological Deficits
   Associated with Cannabis Use in Young Adults, 121(1-2) J. Drug &
   Alcohol Depend. 159 (2012)............................................................ 30

Jorie Casey, Effects of Frequent Marijuana Use on Risky Decision-Making
   in Young Adult College Students, Addictive Behav. Rpts. (2020)......... 30

Kansas Gen. Stat., Crimes & Punishments (1868)................................. 26

Kristin Wong, Establishing Legal Limits for Driving Under the Influence of
   Marijuana, Injury Epidemiology, 1:26 (2014) .................................... 31

Mary P. Becker, Neurocognition in College-Aged Daily Marijuana Users, J.
   Clin. Exp. Neuropsych., 36(4):379-98 (2014).................................... 30

Saul Cornell & Nathan DeDino, *A Well-Regulated Right: The Early
   American Origins of Gun Control*, 73 Fordham L. Rev. 487 (2004)...... 24

William Blackstone, 4 Commentaries on the Laws of England 55 (1769) . 24

## INTRODUCTION

"[T]here is no constitutional problem with separating guns and drugs." *United States v. Yancey*, 621 F.3d 681, 687 (7th Cir. 2010). Congress separated guns and drugs in the Gun Control Act of 1968 by prohibiting "unlawful users" of controlled substances from possessing firearms and prohibiting others from transferring firearms to unlawful drug users. 18 U.S.C. § 922(d)(3), (g)(3).

Plaintiffs claim that Congress cannot constitutionally prohibit medical marijuana[2] users from possessing firearms. Plaintiffs further claim that the prohibition violates the Rohrabacher-Farr Amendment, a rider to the bill appropriating funds to the Department of Justice (DOJ), that restricts DOJ from using appropriated funds to prevent Florida and other states from implementing medical marijuana laws. Plaintiffs are wrong on both counts.

As a threshold matter, however, Plaintiffs lack standing for most of their claims. Only Plaintiffs Vera Cooper and Nicole Hansell claim that their Second Amendment right to possess firearms has been injured, and no Plaintiff claims that they have been injured by DOJ spending in violation of

---

[2] This memorandum uses the phrase "medical marijuana" for convenience, but Congress has found that marijuana "has no currently accepted medical use." 21 U.S.C. § 812(b)(1)(B), Sch. I(c)(10).

the rider.  The Court can thus dismiss multiple plaintiffs and multiple claims for lack of standing at the outset.

To the extent the Court reaches the merits of Plaintiffs' claims, they fail as a matter of law.  In *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court held that a state firearms regulation violated the Second Amendment because it "prevent[ed] *law-abiding citizens* with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 2156 (emphasis added).  By contrast, the laws challenged here impose no burden on the Second Amendment rights of law-abiding citizens.  These laws merely prevent drug users who commit federal crimes by unlawfully possessing drugs from possessing and receiving firearms, and only for so long as they are actively engaged in that criminal activity.

Such restrictions on unlawful drug users are "consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126.  Two closely related traditions are analogous: the tradition of restricting the firearms rights of those who commit crimes and therefore are not "law-abiding citizens," *id.* at 2156, and the tradition of disarming those whose behavior or status would render their firearms possession a danger to themselves or the community.  Possession of illegal drugs, including marijuana, is a federal

crime.  Florida's government recognizes that marijuana use impairs judgment, cognition, and physical coordination, including "the ability to think, judge, and reason," Florida Board of Medicine, Medical Marijuana Consent Form, *available at* https://flboardofmedicine.gov/forms/medical-marijuana-consent-form.pdf (last visited Aug. 3, 2021),[3] precisely the types of impairments that make it dangerous for a person to possess firearms. Accordingly, federal courts have long uniformly upheld Sections 922(d)(3) and (g)(3).  Since *Bruen*, a district court has upheld Section 922(g)(3) and recognized that many earlier decisions likewise conformed to *Bruen*'s reasoning because they found that Section 922(g)(3) was grounded in this nation's historical tradition of firearms regulation.  *United States v. Daniels*, --- F. Supp. 3d ---, 2022 WL 2654232, at *3-4 (S.D. Miss. July 8, 2022).

Finally, should the Court reach them, Plaintiffs' claims under the Rohrabacher-Farr Amendment fare no better.  Plaintiffs do not allege in any but the most conclusory terms that DOJ has prevented Florida from implementing its medical marijuana laws.  To the contrary, Florida has created, implemented, and seen rapid growth in its medical marijuana program since this appropriations rider was enacted.  Nothing in the

---

[3] For the Court's convenience, this source and other sources cited in this Memorandum that are difficult to locate are submitted as exhibits with this Memorandum.

Rohrabacher-Farr Amendment requires DOJ to permit medical marijuana users to possess firearms. The Court should grant Defendants' motion to dismiss.

## BACKGROUND

### I.     Statutory and Regulatory Background

#### A.     Gun Control Act of 1968

The Gun Control Act of 1968 updated earlier federal firearms laws by, among other things, "expand[ing] the categories of persons prohibited from receiving firearms." *Barrett v. United States*, 423 U.S. 212, 220 (1976). Section 922(g) prohibits certain groups from possessing or transporting any firearm with a nexus to interstate commerce, including felons, those adjudicated mentally ill or involuntarily committed, and those subject to a domestic violence restraining order. 18 U.S.C. § 922(g). "Congress' intent in enacting §[] 922(g) . . . was to keep firearms out of the hands of presumptively risky people." *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 112 n.6 (1983).

As relevant here, "unlawful user[s] of . . . any controlled substance" as defined in the Controlled Substances Act (CSA), cannot possess firearms. 18 U.S.C. § 922(g)(3). Marijuana is a controlled substance, and all marijuana possession (except for approved research purposes) violates

4

federal law. *See infra*, p. 6. Section 922(d) prohibits transferring firearms to someone that the transferor knows or has reason to believe falls within one of the categories of 922(g), including unlawful drug users. *See* 18 U.S.C. § 922(d)(3). Therefore, Section 922(g)(3) prohibits marijuana users from possessing firearms, and Section 922(d)(3) prohibits any person from selling firearms to known or suspected marijuana users.

The Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), a bureau within the Department of Justice (DOJ), enforces federal firearms laws and issues regulations concerning those laws. ATF has promulgated a regulation defining an "[u]nlawful user" of a controlled substance as someone who "is a current user" of a controlled substance in a manner other than as prescribed by a physician, meaning that "the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct." 27 C.F.R. § 478.11. ATF also issued Form 4473, which firearms dealers and transferees of a firearm are required to complete before most firearms transfers. Form 4473 asks whether the transferee is an unlawful user of marijuana or any other controlled substance. Am. Compl. Ex. B., ECF No. 12-2.

### B.    Controlled Substances Act

The CSA regulates many drugs, called controlled substances, by categorizing them on schedules in accordance with their potential for abuse, safety, and accepted medical uses, and imposing restrictions based on schedule.  Marijuana is on Schedule I, the most restrictive schedule.  21 U.S.C. § 812, Sch. I(c)(10).  Congress accordingly found that marijuana "has a high potential for abuse," "has no currently accepted medical use in treatment in the United States," and has "a lack of accepted safety for use of the drug or other substance under medical supervision." *Id.* § 812(b)(1).  Because marijuana is a Schedule I drug, possession of marijuana is illegal for all purposes except government-approved research.  *See Gonzales v. Raich*, 545 U.S. 1, 14 (2005).  Possession of marijuana is a crime punishable by up to a year in prison.  21 U.S.C. § 844(a).  A conviction after a previous drug conviction is a felony punishable by up to two years in prison, with increasing penalties for further convictions.  *Id.*

The Attorney General has authority to "transfer between schedules" any drug or "remove any drug or other substance from the schedules" if, after considering scientific and medical evaluations and recommendations from the Secretary of Health and Human Services, he finds that the drug meets criteria for a different schedule or does not meet the requirements for

any schedule.  *Id.* § 811(a)(2).  Since enactment of the CSA, however, the

Executive Branch has denied various requests to reschedule marijuana, and

marijuana has been and remains a Schedule I drug.  *See*, *e.g.*, Drug

Enforcement Administration, *Denial of Petition to Initiate Proceedings To

Reschedule Marijuana*, 81 Fed. Reg. 53,688 (Aug. 12, 2016) (recent denial

of rescheduling petition); *see also Raich*, 545 U.S. at 15 & n.23.

### C.    Rohrabacher-Farr Amendment

Starting in 2015, Congress has included restrictions concerning state

medical marijuana laws in its bills appropriating funds to the DOJ.  Such

restrictions are commonly known as the Rohrabacher-Farr Amendment, after

the lead sponsors of the initial restriction.  The current restriction reads:

"None of the funds made available under this Act to the Department of

Justice may be used, with respect to [Florida and other jurisdictions that

have enacted medical marijuana laws] to prevent any of them from

implementing their own laws that authorize the use, distribution, possession,

or cultivation of medical marijuana."  Consolidated Appropriations Act,

2022, Pub. Law No. 117-103, § 531, 136 Stat. 49, 151 (Mar. 15, 2022).

Like previous iterations, this restriction applies for the limited time period

covered by the appropriations bill, through September 30, 2022. *See id.* § 5.

### D.   Florida's Medical Marijuana Laws

In 2016, Florida enacted a state constitutional amendment to adopt a medical marijuana program.  Fla. Const. art. X, § 29.  That amendment provides: "medical use of marijuana by a qualifying patient or caregiver in compliance with this section is not subject to criminal or civil liability or sanctions under Florida law."  *Id.* § 29(a)(1).  Consistent with the Supremacy Clause, the amendment clarifies that "[n]othing in this section requires the violation of federal law or purports to give immunity under federal law."  *Id.* § 29(c)(5).

Under Florida's legal regime, a Florida resident can obtain a medical marijuana use registry identification card if a physician diagnoses the resident with a qualifying medical condition and certifies that the resident meets all statutory requirements.  Fla. Stat. § 381.986(4)(a).  Holders of registry cards can obtain marijuana from licensed medical marijuana treatment centers (MMTCs) without violating state law.  *Id.* § 381.986(1)(j)(1).  The Florida Department of Health (FDOH) generally regulates and oversees the medical marijuana program.  *See*, *e.g.*, *id.* §§ 381.986(5)(a), (6)(a), 7(a), 8(a).  According to FDOH, as of April 2022, there were 702,081 registered patients, who obtained more than 270 million milligrams of medical marijuana in the most-recent one-week period.

Compl. Ex. C, ECF No. 1-3.  As explained further *infra*, pp. 28-29, Florida

law requires physicians to obtain informed consent by informing users of

marijuana's risks, including impairments to "a patient's coordination, motor

skills, and cognition."  Fla. Stat. § 381.986(4)(a)8.e.  Florida's Board of

Medicine has promulgated an informed consent form describing marijuana's

effects, including impairing "the ability to think, judge, and reason."  Florida

Board of Medicine, Medical Marijuana Consent Form 1.

## II.   Factual Background

### A.   Plaintiffs' Allegations

Plaintiffs are Commissioner Fried and three Florida residents.

Commissioner Fried leads the Florida Department of Agriculture and

Consumer Services ("FDACS").  FDACS has minimal involvement in the

medical marijuana program.  The Complaint mentions just three FDACS

responsibilities concerning medical marijuana: (1) issuing nursery licenses

to MMTCs and applying general agricultural regulations to growth of

marijuana plants, Am. Compl. ¶ 27, ECF No. 12 ("FAC"); Fla. Stat.

§§ 381.986(8)(b)2, (8)(e)6.c, (8)(e)6.d; (2) issuing food licenses to MMTCs

that sell marijuana in edible form, FAC ¶ 27; Fla. Stat. § 381.986(8)(e)8.;

and (3) receiving consumer complaints about medical marijuana, FAC ¶ 27.

Cooper and Hansell are Florida residents who regularly use marijuana, allegedly in compliance with Florida law. FAC ¶¶ 29, 32. They each attempted to purchase a firearm, but were denied when they indicated on Form 4473 that they were "unlawful user[s]" of marijuana or other controlled substances. *Id.* ¶¶ 31, 34.

Franklin is a Florida resident who owns a firearm. *Id.* ¶ 35. He does not use marijuana, does not hold a medical marijuana registry card, and is not subject to any federal legal impediment to firearm ownership. *Id.* ¶¶ 35, 37. Franklin further alleges that, although he has a qualifying medical condition, he will not participate in Florida's medical marijuana program because he wants to own a firearm legally. *Id.* ¶¶ 36-37.

## B.  Plaintiffs' Claims

Plaintiffs claim that Sections 922(d)(3) and 922(g)(3), ATF's regulatory definition of unlawful drug user, and Form 4473 violate the Second Amendment, as applied to medical marijuana users. *Id.* ¶ 111. They seek a declaratory judgment that the provisions are unconstitutional (Count I) and an injunction against their enforcement (Count II). *See id.* ¶¶ 125, 132. Plaintiffs also claim that unspecified enforcement of these provisions violates the Rohrabacher-Farr Amendment, *id.* ¶ 137, and they seek both a declaratory judgment (Count III) and an injunction (Count IV) to remedy

this alleged violation, *id.* ¶¶ 139, 144.  Plaintiffs purport to bring each claim under 42 U.S.C. § 1983.  *See id.* Counts I-IV Headings; *id.* ¶ 23.

## LEGAL STANDARD

In a facial challenge under Rule 12(b)(1), a court examines whether plaintiffs' factual allegations, taken as true, establish subject-matter jurisdiction.  *See MSP Recovery Claims, Series LLC v. Tower Hill Preferred Ins. Co.*, No. 1:20-CV-262-AW-GRJ, 2021 WL 8533679, at *1 (N.D. Fla. July 13, 2021).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must assert 'enough facts to state a claim to relief that is plausible on its face.'" *Penton v. Centennial Bank*, No. 4:18-CV-00450-AW-CAS, 2019 WL 6769661, at *2 n.2 (N.D. Fla. Nov. 22, 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court accepts the truth of Plaintiffs' factual allegations, "but not labels and legal conclusions[.]" *Id.*

## ARGUMENT

### I.    Plaintiffs Lack Standing To Bring Most Of Their Claims

"[T]he 'irreducible constitutional minimum' of standing consists of three elements.  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc.*

*v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "[S]tanding is a part of subject matter jurisdiction." *Ladies Mem'l Ass'n, Inc. v. City of Pensacola*, 34 F.4th 988, 994 (11th Cir. 2022).

Plaintiffs lack standing to bring most of their claims. As described below, the Court should dismiss all claims other than Hansell and Cooper's Second Amendment claims for lack of subject-matter jurisdiction.

### A.   Fried Lacks Standing

Fried lacks standing because she alleges no injury. Her claim is essentially that Defendants have violated the rights of *other* Florida residents to own firearms. Under certain narrow circumstances, a state can sue on behalf of citizens under the *parens patriae* doctrine. But the State of Florida is not a plaintiff here. And even if it were, a state may not "as *parens patriae* . . . institute judicial proceedings to protect citizens of the United States from the operation of the statutes thereof." *Massachusetts v. Mellon*, 262 U.S. 447, 485 (1923); *see also Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 610 n.16 (1982) ("A State does not have

standing as *parens patriae* to bring an action against the Federal Government.").[4]

Nor does Fried allege injury to herself or FDACS. She suggests that Defendants have "interfere[d] with the 'ability to enforce [Florida's] legal code,'" FAC ¶ 76 (quoting *Wyoming ex. rel. Crank v. United States*, 539 F. 3d 1236, 1242 (10th Cir. 2008)), but she identifies no law that Florida has been unable to create or enforce because of Defendants' actions. Fried alleges no interference with her exercise of her limited authority over Florida's medical marijuana program, such as issuing growing licenses to marijuana growers or food licenses to edible marijuana vendors. *See* FAC ¶ 27. Nor does the state claim any injury to its interests; the state is represented in court by "the chief state legal officer," Florida's Attorney General, Fla. Const. art. IV, § 4(b), who has not joined this lawsuit.

Fried gets nowhere by contending that states are "considered to be a special class of federal litigants." *Id.* ¶ 76. As noted above, Fried is not and does not represent a state. Moreover, *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130 (2d Cir. 2021), cited by Plaintiffs, emphasized that

---

[4] *Accord Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 176 (D.C. Cir. 2019); *Michigan v. EPA*, 581 F.3d 524, 529 (7th Cir. 2009); *Oklahoma v. Biden*, No. CIV-21-1136-F, 2021 WL 6126230, at *3 (W.D. Okla. Dec. 28, 2021).

any special solicitude "does not absolve a state or state-agency plaintiff from the constitutional requirement that it establish a sufficiently 'concrete, particularized, and . . . imminent' injury in fact," *id.* at 145, and dismissed the lawsuit absent such an injury.  In *Massachusetts v. EPA*, also cited by Plaintiffs, the state alleged injury to its property: loss of coastal land through flooding caused by climate change.  549 U.S. 497, 523 (2007).  And in *Wyoming*, the state alleged that a federal legal interpretation preempted and prevented the operation of a state law.  539 F.3d at 1241-42.  Fried alleges no such particularized injury here.

### B.    Franklin Lacks Standing

Franklin lacks standing because he alleges no injury to his right to own firearms.  He owns a firearm, is not an unlawful drug user, and does not allege that federal law prevents him from owning a firearm.  FAC ¶¶ 35-37.

Another district court rejected standing under virtually identical circumstances.  In *Bradley v. United States*, 402 F. Supp. 3d 398, 400-01 (N.D. Ohio 2019), a firearm owner alleged he was eligible for Ohio's medical marijuana program but did not register because it would render his firearm ownership unlawful.  The court reasoned that unless and until he registered for medical marijuana use, he lacked standing to challenge Sections 922(d)(3) and 922(g)(3) because he was not subject to either

provision. *Id.* at 403. His allegation that he would lose the right to own firearms "if and when he registers for the Ohio Medical Marijuana Program" was "too speculative to establish standing." *Id.* at 402. As in *Bradley*, Franklin "has not shown a '*genuine* threat of *imminent* prosecution' under § 922(g)(3)," and his claims should be dismissed. *Id.* at 403.

### C.    All Plaintiffs Lack Standing To Assert Rohrabacher-Farr Amendment Claims

Plaintiffs lack standing to bring their Rohrabacher-Farr Amendment claims because they allege no injury from DOJ spending purportedly in violation of that Amendment. Plaintiffs identify no actions Defendants have taken to spend money in violation of the Amendment. They contend (erroneously, *see infra*, pp. 33-36) that prosecution of medical marijuana users for possessing firearms would violate the Amendment, FAC ¶ 71, but they do not allege that they have been prosecuted. Nor could they contend that prosecution is "certainly impending," *Clapper v. Amnesty International USA*, 568 U.S. 398, 410 (2013), as required for standing based on threatened future injury. Each individual Plaintiff has refrained either from possessing a firearm (Cooper and Hansell) or from unlawful drug use (Franklin), eliminating any imminent risk of prosecution. FAC ¶¶ 31, 34, 37.

## II.   Plaintiffs' Second Amendment Claims Fail As a Matter of Law Because The Challenged Provisions Are Constitutional

### A.   Precedent Shows That Plaintiffs' Claims Fail

In considering whether laws barring unlawful drug users from possessing firearms comply with the Second Amendment, this Court does not write on a blank slate.  Uniform precedent shows that these laws are constitutional, including as applied to Plaintiffs, and this Court need not make any new law in so holding.

The Supreme Court in *District of Columbia v. Heller* defined the right to bear arms as belonging to "law-abiding, responsible citizens."  554 U.S. 570, 635 (2008).  Consistent with that definition, the Court explained that "nothing in [its] opinion should be taken to cast doubt" on "longstanding prohibitions on the possession of firearms by felons and the mentally ill," *id.* at 626, which were among a "[non-]exhaustive" list of "presumptively lawful regulatory measures."  *Id.* at 627 n.26.  *Bruen* likewise repeatedly described the Second Amendment right as belonging to "law-abiding" citizens.  142 S. Ct. at 2122 ("the Second . . . Amendment[] protect[s] the right of an ordinary law-abiding citizen" to possess handguns); *see also id.* at 2131, 2133, 2135 n.8, 2138, 2150, 2156.  For that reason, *Bruen* approved the constitutionality of "shall-issue" licensing regimes that "require applicants to undergo a background check or pass a firearms safety course"

16

to ensure that "those bearing arms" are "law-abiding, responsible citizens." *Id.* at 2138 n.9; *see id.* at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("[S]hall-issue licensing regimes are constitutionally permissible"). *Bruen* does not cast doubt on firearms restrictions that prevent non-law-abiding individuals from obtaining or possessing firearms.

Under *Heller* and *Bruen*, medical marijuana users do not possess a constitutional right to possess firearms. Possession of marijuana is a federal crime, punishable by up to a year in prison on the first offense and by multiple years in prison for subsequent offenses. 21 U.S.C. § 844(a). There is no "medical marijuana" exception to those restrictions. *See Raich*, 545 U.S. at 14. Sections 922(d)(3) and (g)(3) apply to individuals who not only *have committed* federal crimes, but *are actively engaged in criminal activity* at the time they claim the constitutional right to possess firearms: the firearms restrictions in Sections 922(d)(3) and (g)(3) apply to "current user[s]" of drugs whose "unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct." 27 C.F.R. § 478.11. It is therefore plain that persons within Sections 922(d)(3) and (g)(3)'s prohibitions are not "law-abiding" citizens within the scope of the Second Amendment right defined in *Heller* and *Bruen*.

Plaintiffs' attempts to distinguish this aspect of *Heller*'s and *Bruen*'s holdings are unpersuasive. First, Plaintiffs mischaracterize this language in *Heller* and *Bruen* as "dicta." FAC ¶ 91. But the "portion of *Heller*" that "limits the Court's opinion to possession of firearms by *law-abiding* and *qualified* individuals . . . is not dicta." *United States v. Rozier*, 598 F.3d 768, 771 n.6 (11th Cir. 2010). Even if it were, it would be entitled to "considerable weight," *id.*—an admonition with even more force now that *Bruen* has reiterated the point.

Second, Plaintiffs argue that medical marijuana users are "law-abiding" citizens. Based on the Rohrabacher-Farr Amendment, Plaintiffs assert that they "may not legally be charged or prosecuted under either federal or state law for their use of medical marijuana," FAC ¶ 92, and that the "federal government ha[s] expressly permitted and protected" marijuana use by medical marijuana participants, *id.* ¶ 93. But that premise is incorrect, as explained by a case prominently cited by Plaintiffs, *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016); *see* FAC ¶¶ 13, 20, 70-72, 74, 108, 136-137 (citing *McIntosh*). *McIntosh* held that the Rohrabacher-Farr Amendment created a time-limited bar on DOJ spending funds to prosecute individuals for possession, distribution, or manufacture of marijuana in compliance with state medical marijuana laws during the

temporal duration of the appropriations restriction.  833 F.3d at 1163-67.

But *McIntosh* further cautioned:

> [The Rohrabacher-Farr Amendment] does not provide immunity from prosecution for federal marijuana offenses. . . . Anyone in any state who possesses, distributes, or manufactures marijuana for medical or recreational purposes (or attempts or conspires to do so) is committing a federal crime.  The federal government can prosecute such offenses for up to five years after they occur. *See* 18 U.S.C. § 3282.  Congress currently restricts the government from spending certain funds to prosecute certain individuals.  But Congress could restore funding tomorrow, a year from now, or four years from now, and the government could then prosecute individuals who committed offenses while the government lacked funding. . . . Nor does any state law 'legalize' possession, distribution, or manufacture of marijuana. Under the Supremacy Clause of the Constitution, state laws cannot permit what federal law prohibits.  U.S. Const. art VI, cl. 2.

*Id.* at 1179 n.5.  *McIntosh* therefore underscores that medical marijuana users are not law-abiding because they are "committing a federal crime" by possessing marijuana, for which the Rohrabacher-Farr Amendment "does not provide immunity from prosecution." *Id.*

Courts have uniformly upheld § 922(d)(3) and (g)(3), both before and after *Bruen*.  Before *Bruen*, six courts of appeals[5] and district courts in five

_____

[5] *See United States v. Carter*, 750 F.3d 462, 466-68 (4th Cir. 2014); *United States v. Patterson*, 431 F.3d 832, 835-36 (5th Cir. 2005); *United States v. May*, 538 F. App'x 465, 466 (5th Cir. 2013); *United States v. Yancey*, 621 F.3d 681, 683-87 (7th Cir. 2010); *United States v. Seay*, 620 F.3d 919, 925 (8th Cir. 2010); *United States v. Dugan*, 657 F.3d 998, 999-00 (9th Cir. 2011); *Wilson v. Lynch*, 835 F.3d 1083, 1093-94 (9th Cir. 2016); *United States v. Richard*, 350 F. App'x 252, 260 (10th Cir. 2009).

other circuits[6] upheld § 922(d)(3) or (g)(3), including a case from this

district involving medical marijuana.[7]  Plaintiffs acknowledge a few of these

decisions, but Plaintiffs claim that none of them remain good law after

*Bruen* because they were not grounded in analysis of history or tradition.

FAC ¶¶ 62-68.

  Plaintiffs are wrong.  In the first decision about the constitutionality of

§ 922(g)(3) since *Bruen*, a district court upheld the statute and confirmed

that many of the earlier decisions had likewise "upheld the constitutionality

of § 922(g)(3) under *Heller*'s standards of history and tradition."  *Daniels*,

2022 WL 2654232, at *3-4 (citing *Seay*, 620 F.3d 919; *Dugan*, 657 F.3d

998; *Richard*, 350 F. App'x 252; and *Yancey*, 621 F.3d 681).  *Daniels* found

---

[6] *Gibson v. Holder*, No. 3:14CV641/MCR/EMT, 2015 WL 5635125, at *12 (N.D. Fla. Aug. 3, 2015), *R. &R. adopted*, No. 3:14CV641/MCR/EMT, 2015 WL 5634596 (N.D. Fla. Sept. 23, 2015); *United States v. Emond*, No. 2:12-CR-00044-NT, 2012 WL 4964506, at *5 (D. Me. Oct. 17, 2012); *United States v. Westley*, No. 3:17-CR-171 (MPS), 2018 WL 1832912, at *3 (D. Conn. Apr. 17, 2018); *United States v. Moss*, No. 18-CR-316 (JCH), 2019 WL 3215960, at *5 (D. Conn. July 17, 2019); *United States v. Korbe*, No. CR. 09-05, 2010 WL 2404394, at *4 (W.D. Pa. June 9, 2010); *Fausnaught v. United States*, No. 3:03-CR-00032, 2013 WL 12333443, at *7 (M.D. Pa. Mar. 1, 2013); *Roberge v. United States*, No. 1:04-CR-70, 2013 WL 4052926, at *16-18 (E.D. Tenn. Aug. 12, 2013); *Bradley v. United States*, 402 F. Supp. 3d 398, 403-04 (N.D. Ohio Aug. 14, 2019); *United States v. Campbell*, No. 4:18-CR-23, 2020 WL 699821, at *4 (E.D. Tenn. Feb. 11, 2020).

[7] *See Gibson*, 2015 WL 5635125, at *12 (rejecting claim that it violated Second Amendment to deny firearms to marijuana user with "a 'medical marijuana card'").

particularly persuasive the "robust discussion of the historicity

of § 922(g)(3)" in *Yancey*, 621 F.3d 681.  *Daniels*, 2022 WL 2654232, at *4.

As *Daniels* described, *Yancey* found § 922(g)(3) analogous to the tradition

of "disarmament of felons" and early statutes that "disarmed 'tramps' and

'intoxicated persons,'" and also reasoned that "most scholars of the Second

Amendment agree that the right to bear arms was tied to the concept of a

virtuous citizenry and that, accordingly, the government could disarm

'unvirtuous citizens.'"  *Id.* (quoting *Yancey*, 621 F.3d at 684-85).  *Daniels*

concluded that "the analysis in *Yancey* demonstrates the historical attestation

demanded by the *Bruen* framework" because "it suffices to show that

analogous statutes which purport to disarm persons considered a risk to

society—whether felons or alcoholics—were known to the American legal

tradition."  *Id.*  As in *Daniels*, this Court should recognize that the

challenged provisions are plainly valid under the framework set forth in

*Heller* and *Bruen*.

### B.   Disarming Unlawful Drug Users Is Consistent With History And Tradition

Disarming unlawful drug users "is consistent with this Nation's

historical tradition of firearm regulation."  *Bruen*, 142 S. Ct. at 2126.[8]  Two

---

[8] Consistent with *Heller* and *Bruen*, this Memorandum discusses historical
sources through the end of the 19th century.  *See Heller*, 554 U.S. at 610-19

related historical traditions are analogous: the tradition of excluding those who engage in criminal activity from the right to bear arms, and the tradition of disarming those whose status or behavior would make it dangerous for them to possess firearms.

*First*, the right to keep and bear arms has historically belonged to "law-abiding" citizens, *e.g.*, *Bruen*, 142 S. Ct. at 2122, thus excluding those who engage in criminal activity. "*Heller* identified . . . as a 'highly influential' 'precursor' to the Second Amendment," *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (quoting *Heller*, 554 U.S. at 604), a report of Pennsylvania antifederalists who advocated "that citizens have a personal right to bear arms 'unless for crimes committed, or real danger of public injury.'" *Id.* (quoting Bernard Schwartz, 2 *The Bill of Rights: A Documentary History* 662, 665 (1971)).[9] "Many of the states, whose own constitutions entitled their citizens to be armed, did not extend

---

(discussing 19th century sources); *Bruen*, 142 S. Ct. at 2150-56 (same). "[A]n ongoing scholarly debate" exists on whether historical evidence from the era of the ratification of the Second Amendment in 1791 or the Fourteenth Amendment in 1868 is more probative in delineating the constitutional right to bear arms. *Bruen*, 142 S. Ct. at 2138. This Court need not resolve this debate because, as discussed below, the relevant historical traditions extend through both eras.

[9] "One reason for considering this proposal 'highly influential,' is that it represents the view of the Anti-federalists—the folk advocating for . . . a strong Bill of Rights." *United States v. Tooley*, 717 F. Supp. 2d 580, 590 (S.D. W. Va. 2010), *aff'd*, 468 F. App'x 357 (4th Cir. 2012)

this right to persons convicted of crime." *Id.* "Criminals in England could also be, and often were, disarmed." *Tooley*, 717 F. Supp. 2d at 589.

As several circuits have recognized, "many scholars agreed that 'the right to bear arms was tied to the concept of a virtuous citizenry[;] ... accordingly, the government could disarm "unvirtuous citizens." '" *Folajtar v. Att'y Gen. of the U.S.*, 980 F.3d 897, 902 (3d Cir. 2020) (quoting *Binderup v. Att'y Gen. of the U.S.*, 836 F.3d 336, 348 (3d Cir. 2016) (en banc)); *accord Yancey*, 621 F.3d at 684-85 (7th Cir. 2010); *United States v. Vongxay,* 594 F.3d 1111, 1118 (9th Cir. 2010). "One implication of this emphasis on the virtuous citizen is that the right to arms does not preclude laws disarming . . . criminals." Don B. Kates & Clayton E. Cramer, *Second Amendment Limitations and Criminological Considerations*, 60 Hastings L.J. 1339, 1360 (2009).[10]

Second, as Plaintiffs concede, a historical tradition exists of regulations that restrict or prohibit firearms possession by those whose possession of firearms the government deems dangerous. FAC ¶¶ 10, 18. A

---

[10] The Court need not determine the outer bounds of criminal disarmament. Plaintiffs concede that historical tradition supports disarming those whose criminal activity shows that it would be dangerous for them to possess firearms. FAC ¶¶ 55, 58. As explained *infra*, pp. 28-33, the impairing effects of illegal drugs, including marijuana, make it dangerous for regular unlawful drug users to possess firearms.

1662 English law allowed lieutenants to disarm "any person or persons" judged "*dangerous to the Peace of the Kingdome*." 13 & 14 Car. 2, ch. 3, § XIII (1662) (emphasis added). Likewise, in America, the Pennsylvania antifederalists' influential proposal would have allowed disarmament for "real danger of public injury." *Skoien*, 614 F.3d at 640.

In England and in America from the colonial era through the 19th century, governments regularly disarmed a variety of groups deemed dangerous. England disarmed Catholics in the 17th and 18th centuries. *See Heller*, 554 U.S. at 582 (citing 1 W. & M., ch. 15, § IV, in 3 Eng. Stat. at Large 422 (1689); William Blackstone, 4 Commentaries on the Laws of England 55 (1769)). Many American colonies forbade providing Indians with firearms.[11] "During the American Revolution, several states passed laws providing for the confiscation of weapons owned by persons refusing to swear an oath of allegiance to the state or the United States." Saul Cornell & Nathan DeDino, *A Well-Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487, 506 n.128 (2004) (citing Act of Mar. 14, 1776, ch. VII, 1775-1776 Mass. Acts 31; Act for the Further Security of

---

[11] *See, e.g.*, 1633 Va. Acts 219, Act X; 1633 Mass. Acts ch. LVIII § 2; 1645 Laws of New York 47; 1763 Laws of Pennsylvania 319, § 1.

the Government, ch. LXI, § 5, 1777-1778 Pa. Laws 123, 126).  States also have disarmed the mentally ill[12] and panhandlers.[13]

Perhaps most relevant here, a long tradition exists of viewing intoxication as a condition that renders firearms possession dangerous, and accordingly restricting the firearms rights of those who become intoxicated. In 1655, Virginia prohibited "shoot[ing] any gunns at drinkeing."  Act XII of March 10, 1655, 1655 Va. Laws 401, 401-02.  In 1771, New York prohibited firing guns during the New Year's holiday, a restriction that "was aimed at preventing the 'great Damages ... frequently done on [those days] by persons . . . being often intoxicated with Liquor.'"  *Heller*, 554 U.S. at 632 (quoting Ch. 1501, 5 Colonial Laws of New York 244-46 (1894)).

---

[12] *See* 1881 Fla. Laws 87, ch. 3285 § 1 (prohibiting giving "to any person . . . of unsound mind any dangerous weapon"); 1883 Kan. Sess. Laws 372, §364 (prohibiting giving "dangerous weapons . . . to any person of notoriously unsound mind"); *United States v. Emerson*, 270 F.3d 203, 226 n.21 (5th Cir. 2001) (citing scholarship explaining that "idiots," "lunatics," and "those of unsound mind" could historically be disarmed); Carlton F.W. Larson, *Four Exceptions in Search of A Theory: District of Columbia v. Heller and Judicial Ipse Dixit*, 60 Hastings L.J. 1371, 1377 (2009) (because "in eighteenth-century America, justices of the peace were authorized to 'lock up' 'lunatics,' . . . the lesser step of mere disarmament would likely be permissible as well").

[13] *State v. Hogan*, 58 N.E. 572, 572 (Ohio 1900) (upholding Ohio statute forbidding one who "is found going about begging" from "carrying a firearm," and noting that eight other states had enacted similar statutes).

In the era following ratification of the Fourteenth Amendment in 1868, which extended the Second Amendment to the states, *see McDonald v. City of Chicago*, 561 U.S. 742 (2010), many states enacted statutes prohibiting intoxicated persons from possessing, using, or receiving firearms. *See* Kansas Gen. Stat., Crimes & Punishments, § 282 (1868) ("any person under the influence of intoxicating drink" may not "carr[y] on his person a pistol . . . or other dangerous weapon"); 1878 Miss. Laws 175-76 § 2 (making it unlawful to sell pistols and certain knives to a "person intoxicated"); 1883 Mo. Laws 76, § 1 (prohibiting carrying a dangerous weapon "when intoxicated"); 1883 Wis. Sess. Laws 290, Offenses Against Lives and Persons of Individuals, ch. 329 § 3  ("It shall be unlawful for any person in a state of intoxication, to go armed with any pistol or revolver."); 1890 Okla. Sess. Laws 495, art. 47, § 4 (officers may not "carry[] . . . arms while under the influence of intoxicating drinks"); 1899 S.C. Acts 97, No. 67, § 1 (forbidding "boisterous conduct" while "under the influence of intoxicating liquors," including "discharg[ing] any gun" near a public road); *see also State v. Shelby*, 2 S.W. 468, 469 (Mo. 1886) (upholding Missouri statute as "a reasonable regulation of the use of such arms").  The historical tradition embodied by these laws continues today, with a majority of states

"restrict[ing] the right of habitual drug abusers or alcoholics to possess or carry firearms." *Yancey*, 621 F.3d at 684 (collecting statutes).

### C. The Challenged Provisions Pass *Bruen*'s Analogical Reasoning Test

Plaintiffs argue that "there is no historical tradition of denying individuals their Second Amendment rights based . . . on the use of marijuana," FAC ¶ 16, but Plaintiffs misconceive of the nature of *Bruen*'s historical test. Under *Bruen*, a "historical *analogue*" is sufficient to sustain a firearms regulation; a "historical twin" is not required. 142 S. Ct. at 2133. Therefore, a lack of early laws specifically targeting marijuana does not imply that today's laws are unconstitutional as applied to marijuana. Rather, courts must "engag[e] in an analogical inquiry" comparing a modern law to historical tradition, with "two metrics" being "central" in this inquiry: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* Both metrics demonstrate the constitutionality of the challenged restrictions.

As to the first metric, "how . . . the regulations burden a *law-abiding* citizen's right to armed self-defense[,]" *id.* (emphasis added), the answer is simple: not at all. Sections 922(d)(3) and (g)(3) do not apply to law-abiding citizens, but only to those who commit federal crimes by unlawfully possessing drugs. Even as to *non-law-abiding* individuals, § 922(d)(3) and

(g)(3) pose a limited burden, applying only so long as they are "actively engaged in" unlawful drug use.  27 C.F.R. § 478.11; *see also Yancey*, 621 F.3d at 686 ("an unlawful drug user . . . could regain his right to possess a firearm simply by ending" unlawful drug use, making § 922(g)(3) "far less onerous" than other firearms restrictions).

As to the second metric, *why* the government has enacted the restriction, unlawful drug use (including marijuana use) causes significant mental and physical impairments that make it dangerous for a person to possess firearms.  Plaintiffs can hardly dispute these impairments because they are written into Florida's medical marijuana law.  Under Florida law, a physician certifying a patient to use medical marijuana must obtain informed consent, which requires providing "information related to . . . [t]he potential effect that marijuana may have on a patient's coordination, motor skills, and cognition, including a warning against operating heavy machinery, operating a motor vehicle, or engaging in activities that require a person to be alert or respond quickly."  Fla. Stat. § 381.986(4)(a)8.e (2022).

Pursuant to this statute, the Florida Board of Medicine promulgated an informed consent form that physicians must use, which states:

> The use of marijuana can affect coordination, motor skills and cognition, i.e., the ability to think, judge and reason.  Driving under the influence of cannabis can double the risk of vehicular accident . . . .   While using medical marijuana, I

should not drive, operate heavy machinery or engage in any activities that require me to be alert and/or respond quickly and I should not participate in activities that may be dangerous to myself or others.

Florida Board of Medicine, Medical Marijuana Consent Form at 1.[14]

The form further states that medical marijuana can cause numerous "[p]otential side effects," including "dizziness, anxiety, confusion, . . . impairment of short term memory, . . . difficulty in completing complex tasks, . . . inability to concentrate, impaired motor skills, paranoia, psychotic symptoms, . . . [and] depression," and may also "impair . . . judgment." *Id.* at 2. It can hardly be questioned that handling a firearm "may be dangerous to [one]self or others," and that one needs "the ability to think, judge and reason" to operate a firearm safely. *Id.* at 1.

Furthermore, ample scholarship confirms Florida's conclusions about marijuana's impairing effects.[15] For example, one study found that

---

[14] The Court can take judicial notice of this consent form, which was published by Florida's Board of Medicine. *See Coastal Wellness Ctrs., Inc. v. Progressive Select Ins. Co.*, 309 F. Supp. 3d 1216, 1220 n.4 (S.D. Fla. 2018) ("The Court may take judicial notice of government publications and website materials.").

[15] The Court need not consider this empirical scholarship because marijuana's impairing effects are a matter of common sense, confirmed by Florida's medical marijuana statute and informed consent form. If the Court relies on the empirical scholarship cited herein, the Court can treat Defendants' motion as a Motion for Summary Judgment. *See* Fed. R. Civ. P. 12(d).

marijuana use "was associated with elevated risky decision-making" and caused "significant deficits" to "executive planning," while adversely affecting "general motor performance, sustained attention, spatial working memory, and response inhibition." Jon Grant, Short Communication; Neuropsychological Deficits Associated with Cannabis Use in Young Adults, 121(1-2) J. Drug & Alcohol Depend. 159-162, at 5 (2012).   Another study shows that marijuana users "exhibit impairments on . . . behavioral control," which "may contribute to poor decision-making." Daniel J. Fridberg, Cognitive Mechanisms Underlying Risky Decision-Making in Chronic Cannabis Users, 54 (1) J. Math Psychol. 28-38, at 13-14 (2010).[16] Studies also show that "marijuana use impairs cognitive functions and

---

[16] *See also* Jorie Casey, Effects of Frequent Marijuana Use on Risky Decision-Making in Young Adult College Students, Addictive Behav. Rpts., at 1, 6 (2020) (marijuana use "may contribute to cognitive impairments in executive functioning," making marijuana users "more likely to make risky judgments" and "exhibit increased impulsive decision-making"); Christopher Whitlow, Short Communication; Long-Term Heavy Marijuana Users Make Costly Decisions on a Gambling Task, 76 (1-2) J. Drug Alcohol Depend. 107-11 (2004) at 5 (2004) (results "suggest[] that heavy marijuana users may be particularly prone to poor decision-making"); Brian F. O'Donnell, Decision Making and Impulsivity in Young Adult Cannabis Users, Frontiers in Psych., 12:679904, at 1 (2021) (marijuana users showed "greater impulsivity" than non-users); Mary P. Becker, Neurocognition in College-Aged Daily Marijuana Users, J. Clin. Exp. Neuropsych., 36(4):379-98, at 18 (2014) (marijuana users "demonstrated numerous cognitive deficits" that affected "decision-making").

driving skills and increases crash risk." Kristin Wong, Establishing Legal Limits for Driving Under the Influence of Marijuana, Injury Epidemiology, 1:26, at 6 (2014); *see also* Bernard Laurnon, Cannabis Intoxication & Fatal Road Crashes in France, BMJ, 10;31(7529) at 4-5 (2005) (finding "a causal relation between cannabis and crashes.").

Several courts of appeals have concluded that the impairing effects of marijuana or other illegal drugs make it dangerous for users to possess firearms. *See Wilson v. Lynch*, 835 F.3d 1083, 1094 (9th Cir. 2016) ("It is beyond dispute that illegal drug users, including marijuana users, are likely as a consequence of that use to experience altered or impaired mental states that affect their judgment and that can lead to irrational or unpredictable behavior."); *United States v. Carter*, 750 F.3d 462, 469-70 (4th Cir. 2014) (finding "convincing" the government's argument "that drugs 'impair [users'] mental function . . . and thus subject others (and themselves) to irrational and unpredictable behavior'"); *Yancey*, 621 F.3d at 685 ("habitual drug abusers, like the mentally ill, are more likely to have difficulty exercising self-control, making it dangerous for them to possess deadly firearms").

Plaintiffs essentially concede that it is dangerous to "use . . . a firearm while under the influence of marijuana" because marijuana "could affect

their ability to safely use it at that moment." FAC ¶ 54.  But Plaintiffs

counter that marijuana users should be allowed to possess firearms and

trusted not to use them when under the influence.  *See id.*  The flaw in

Plaintiffs' logic is that marijuana use impairs judgment – as Florida's Board

of Medicine puts it, "the ability to think, judge and reason."  Medical

Marijuana Consent Form at 1.  It is therefore dangerous to trust regular

marijuana users to exercise sound judgment while intoxicated, a fact

tragically borne out by the frequency with which marijuana users drive while

impaired and suffer fatal collisions.  *See* NHTSA, Presence of Drugs in

Drivers (percentage of fatally injured drivers who tested positive for

marijuana increased from 8% to 18% from 2007 to 2016).

Marijuana users with firearms pose a danger comparable to, if not

greater than, other groups that have historically been disarmed.  For

example, "like the mentally ill," drug users "are more likely to have

difficulty exercising self-control, making it dangerous for them to possess

deadly firearms."  *Yancey*, 621 F.3d at 685.  In addition, the impairments

caused by marijuana use are analogous to those caused by "intoxicat[ion]"

with alcohol, which has historically justified firearms restrictions.  *Daniels*,

2022 WL 2654232, at *4 (quoting *Shelby*, 2 S.W. 468).  In fact, greater

justification exists for firearms restrictions on marijuana users because

32

unlike alcohol, marijuana is an illegal drug.  Such restrictions are therefore also analogous to firearms restrictions on those engaged in criminal activity. Because the challenged provisions do not "burden a law-abiding citizen's right to armed self-defense" and are "comparably justified" as historical firearms regulations, *Bruen*, 142 S. Ct. at 2133, they comport with the Second Amendment.

## III. Plaintiffs Fail to State a Claim Under the Rohrabacher-Farr Amendment or Section 1983

### A. Plaintiffs Fail to State a Claim Under the Rohrabacher-Farr Amendment

Plaintiffs allege no violation of the Rohrabacher-Farr Amendment. As an initial matter, Plaintiffs cannot assert that the mere existence of statutes or regulations violate the Rohrabacher-Farr Amendment.  That Amendment merely restricts spending by the DOJ.  It "does not provide immunity" from federal law or invalidate federal law.  *McIntosh*, 833 F.3d at 1179 n.5.  Congress, not DOJ, enacted Sections 922(d)(3) and 922(g)(3). The challenged regulatory definitions and Form 4473 were promulgated long before enactment of the Rohrabacher-Farr Amendment.  *See* Definitions for the Categories of Persons Prohibited From Receiving Firearms (95R-051P), 62 Fed. Reg. 34,634, 34,639 (June 27, 1997) (promulgating definitions of "[c]ontrolled substance" and "[u]nlawful user

of or addicted to any controlled substance" now codified in 27 C.F.R.

§ 478.11); *United States v. Squires*, 440 F.2d 859, 861-62 (2d Cir. 1971)

(describing how Form 4473 was in use in December 1968). The mere

existence of these provisions cannot violate the Rohrabacher-Farr

Amendment.

   To the extent Plaintiffs contend that potential prosecution of medical

marijuana users for firearms possession (or of transferors of firearms to

medical marijuana users) would violate the Rohrabacher-Farr Amendment,

they are incorrect because such enforcement would not prevent Florida from

implementing its medical marijuana laws. The Rohrabacher-Farr

Amendment has been in effect throughout the creation and existence of

Florida's medical marijuana program. In less than six years, Florida has

enshrined medical marijuana into the state constitution, enacted legislation

and regulations to implement the program, created licensing processes, and

grown the program at such speed that as of March 2022, there were 702,081

registered patients, 415 dispensing locations, and 270,724,530 mg of

medical marijuana dispensed in one week. Compl. Ex. C. The inability of

medical marijuana users to possess firearms, or the possibility of prosecution

if a medical marijuana user unlawfully possesses a firearm, does not prevent

Floridians from using medical marijuana. Nor do Plaintiffs allege that DOJ

has prosecuted any Floridian merely for using medical marijuana in compliance with state law.

Plaintiffs cite no language in the Rohrabacher-Farr Amendment stating that the Amendment prevents the DOJ from enforcing firearms restrictions against medical marijuana users. The cases cited by Plaintiffs are inapposite because they only hold that DOJ cannot spend money on "prosecuting individuals *for use, distribution, possession, or cultivation of medical marijuana* that is authorized by [state medical marijuana] laws." *McIntosh*, 833 F.3d at 1176 (emphasis added); *see also United States v. Bilodeau*, 24 F.4th 705, 713 (1st Cir.), *cert. denied*, No. 21-1487, 2022 WL 2295607 (S. Ct. Jun. 27, 2022) (mem.). In both *McIntosh* and *Bilodeau*, the prosecutions at issue were for drug offenses: manufacture, possession, and distribution of marijuana, and related conspiracies. *McIntosh*, 833 F.3d at 1169; *Bilodeau*, 24 F.4th at 711.

*McIntosh* and *Bilodeau* did not address whether the Rohrabacher-Farr Amendment poses any obstacle to enforcing prohibitions on medical marijuana users owning firearms. But the courts' reasoning suggests an important distinction, explaining that the Amendment "prohibits DOJ from spending money on actions that prevent the Medical Marijuana States' giving practical effect to their state laws that authorize the use, distribution,

possession, or cultivation of medical marijuana." *McIntosh*, 833 F.3d at 1176; *see also Bilodeau*, 24 F.4th at 712-13.  Merely preventing medical marijuana users from owning firearms does not deprive medical marijuana laws of practical effect in the way that those courts found that prosecutions for manufacturing, possessing, or distributing medical marijuana did.  And again, the rapid growth of Florida's medical marijuana program belies any assertion that its medical marijuana laws have been denied practical effect.

### B.   Plaintiffs Cannot Bring Section 1983 Claims Against the Federal Government

Plaintiffs purport to bring each claim under 42 U.S.C. § 1983.  *See* FAC Count I-IV Headings ("42 U.S.C. § 1983"); *see also* FAC ¶ 23 ("Plaintiffs seek relief pursuant to 28 [sic] U.S.C. §[] 1983").  However, Section 1983 "provides 'a remedy for deprivation of rights under color of state law and does not apply when the defendants are acting under color of federal law.'"  *Carman v. Parsons*, 789 F.2d 1532, 1534 (11th Cir. 1986) (per curiam) (quoting *Mack v. Alexander*, 575 F.2d 488, 489 (5th Cir. 1978)); *see also* 42 U.S.C. § 1983 (applying to violations "under color of [law] *of any State or Territory or the District of Columbia*") (emphasis added).  Accordingly, Plaintiffs' allegations that federal government officials are violating their rights under color of federal law do not state Section 1983 claims.

## CONCLUSION

The Court should dismiss all claims for lack of subject-matter jurisdiction or failure to state a claim.

DATED: August 8, 2022                     Respectfully submitted,

                                          BRIAN M. BOYNTON
                                          Principal Deputy Assistant Attorney General

                                          LESLEY FARBY
                                          Assistant Branch Director

                                          /s/ *Jeremy S.B. Newman*
                                          JEREMY S.B. NEWMAN
                                          Trial Attorney
                                          Civil Division, Federal Programs Branch
                                          U.S. Department of Justice
                                          1100 L St. NW
                                          Washington, DC 20005
                                          Phone: (202) 532-3114
                                          Email: jeremy.s.newman@usdoj.gov


                                          *Counsel for Defendants*

## CERTIFICATE OF WORD COUNT

I hereby certify that this memorandum complies with Local Rule 7.1(F) because it contains 7,995 words, as calculated using Microsoft Word and excluding the case style, table of contents, table of authorities, signature block, and certificate of service.

/s/ *Jeremy S.B. Newman*
Trial Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Jeremy S.B. Newman*
Trial Attorney