## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**NICOLE FRIED,** in her official
capacity as the Commissioner of Agriculture;
and **VERA COOPER, NICOLE HANSELL**
**and NEILL FRANKLIN,**

                    Plaintiffs,                    **CASE NO:** 4:22-CV-00164-AW-MAF

v.

**MERRICK GARLAND**, in his official
capacity as Attorney General of the United
States; **STEVEN M. DETTELBACH**, in his
official capacity as Acting Director of the
Bureau of Alcohol, Tobacco, Firearms, and
Explosives; and **THE UNITED STATES**
**OF AMERICA,**

                    Defendants.
_____/

## MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT OR ALTERNATIVELY FOR SUMMARY JUDGMENT

      Vera Cooper and Nicole Hansell are not "tramps," "mentally ill," "criminals,"

"lunatics," "panhandlers," or "unvirtuous.[1]" The Defendants' assertions and

analogies to the contrary are insulting, illogical, and ahistorical. Those are not even

---

[1] Defendants' Memorandum in Support of Motion to Dismiss First Amended
Complaint or Alternatively For Summary Judgment (ECF No. 14;
"Memorandum"), pgs. 4, 16, 21, 23, 25, 31, 32.

the most dubious comparisons or assertions the Defendants advance, as they also appear to equate depriving state-compliant medical marijuana patients of their Second Amendment rights to the historical disarming of Catholics and Native Americans. *Memorandum*, pg. 24. The Plaintiffs do not believe that such clearly unconstitutional restrictions have any application to this matter. Rather, the Amended Complaint for Declaratory and Injunctive Relief (ECF No. 12; "Amended Complaint") focuses heavily on the history of marijuana and firearm regulations, as required through the newly-articulated test from *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). The Defendants offer no rebuttal to many, if not most, of the Plaintiffs' historical citations.

Instead, the Defendants offer arguments and comparisons that are as "contradictory and unstable" as their overall marijuana policy. *See Standing Akimbo v. U.S.*, 141 S. Ct. 2236, 2236-2237 (2021) (Thomas, C., respecting the denial of certiorari). They deem state-compliant medical marijuana patients too violent to be trusted with a core Constitutional right, but simply gloss over the fact that federal law protects those patients' actions. In fact, in sworn testimony to Congress, Attorney General Merrick Garland has stated that marijuana use is nonviolent and does not cause societal harm. The Defendants analogize medical marijuana patients to felons even though they have actual knowledge that federal law makes marijuana use a misdemeanor absent a prior offense. They also point to the Rohrabacher-Farr

Amendment's success in preventing interference with state medical marijuana programs as a reason why the Defendants should be permitted to take actions that clearly disincentivize participation in such programs.

In all, the Defendants rely on inapplicable case law and dubious logical leaps in seeking to dismiss the Amended Complaint. All such attempts fail. Further, in seeking summary judgment in this matter, the Defendants make clear their contradictory policies in this matter and that, at a minimum, disputes of fact exist as to whether the laws and regulations at issue should survive this as-applied challenge. Therefore, the Defendants' motions should be denied, and they should be required to answer the Amended Complaint.

## **Legal Standards**

As an initial matter, it is difficult to surmise where the Defendants' motion to dismiss ends and where their motion for summary judgment begins. They support both motions with the same memorandum and note only one section that is directly tied to a request for summary judgment. *Memorandum*, pg. 29, n. 15. Accordingly, the Plaintiffs have done their best to determine which citations apply to which motion.

The law is clear that consideration of a motion to dismiss is "limited to the four corners of the complaint." *Gunter v. Advanced Correctional Healthcare, Inc.*, 844 Fed. Appx. 189, 191 n. 2 (11th Cir. 2021). Further, the Court must accept the

well-pled allegations in the Amended Complaint as true and construe them in the light most favorable to the Plaintiffs. *Id.* at 192. Through such a review, this matter may proceed to a consideration on the merits if the Amended Complaint includes "sufficient factual matter…to state a claim to relief that is plausible on its face." *Id. citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As will be noted further below, the Defendants offer several citations and references that go beyond the four corners of the Amended Complaint. Based on well-settled law, none of those arguments may form a basis for dismissal. Further, this response will highlight several areas in which the Defendants simply do not accept as true many of the Plaintiffs' factual allegations or do not cast them in the light most favorable to the Plaintiffs. Similarly, such disagreements do not form legal grounds for dismissal.

Regarding the Defendants' motion for summary judgment, the Court must also draw all "reasonable factual inferences" in the Plaintiffs' favor. *Springer v. First Call Pregnancy Center*, 831 Fed. Appx. 475 (11th Cir. 2020). Summary judgment may be properly granted when the moving party shows that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. *Id.* Once such a motion is filed, the "burden shifts to the nonmoving party" to show that material issues of fact remain. *Id.* To meet this burden, the nonmoving party must

"go beyond the pleadings" and present facts showing what disputed issues remain. *Id.*

Far from meeting this standard, the Defendants simply highlight the significant factual disputes that exist between the parties. The evidence they put forward both ignores and directly conflicts with evidence that the Plaintiffs have already filed in this matter. Additional evidence discussed herein also refutes the Defendants' assertions. The Defendants' arguments only buttress the need for a consideration of this matter on the merits.

**<u>The Plaintiffs Have Standing to Raise their Second Amendment Claims</u>**

The Defendants rightly concede that, at least as pled, Cooper and Hansell have standing to pursue their Second Amendment claims. *Memorandum*, pg. 12. However, they contest, Franklin's and Commissioner's standing, in her official capacity. *Memorandum*, pg. 12-15.

Federal law is clear that, so long as one plaintiff has standing to assert such a claim, Article III standing has been at least initially satisfied and the case may proceed to the merits. *Rojas v. City of Ocala*, 40 F. 4th 1347, 1351 (11th Cir. 2022) ("Because one plaintiff has standing, we need not consider whether the other plaintiffs had sufficient contact with the offensive practice to establish standing."); *see also Crawford v. Marion County Election Bd.*, 553 U.S. 181, 189 n. 7 (2008), *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007), *Mecias v. Hobbs*, 30 F. 4th 890,

897 (9th Cir. 2022), *State v. Biden*, 10 F. 4th 538, 545-546 (5th Cir. 2021), *Outdoor Amusement Business Association, Inc. v. Dept. of Homeland Security*, 983 F. 3d 671, 681 (4th Cir. 2020),. Therefore, based on the Defendants' concession that Cooper and Hansell have standing, this issue is moot.

Even without this well-established principal, the Defendants' arguments fail. They contend that Commissioner lacks standing, in part, because she "is not and does not represent a state." *Memorandum*, pg. 13. Commissioner is one of only six state-wide elected officials in the state of Florida.  It may come as a surprise to the Florida voters who elected her as Commissioner of Agriculture that the federal government does not believe Commissioner represents them in her official capacity. However, state agencies are also "owed 'special solicitude'" for standing purposes. *Lacewell v. Office of Comptroller of Currency*, 999 F. 3d 310, 145-146 (2d Cir. 2021). The Defendants do not (and could not) assert that Commissioner does not at least represent a state agency in her official capacity.

Commissioner has also alleged an injury of the type deemed sufficient for state or state agency plaintiffs. As pled, Florida law requires Commissioner to issue the equivalent of legal permission to possess a firearm to anyone meeting specific statutory criteria. *Amended Complaint,* ⁋ 26, 77; *see also* § 790.06(1), Fla. Stat. The Challenged Sections and Challenged Regulations, however, preclude Florida citizens who are medical marijuana cardholders from possessing firearms. This

directly contradicts  Florida's firearms regulation, which includes no such automatic preclusion of medical marijuana patients. In that way, the challenged federal laws preempt state laws which are within Commissioner's official jurisdiction and which she is tasked with giving effect.

Further, as will be discussed in regard to the Rohrabacher-Farr Amendment, the Challenged Sections and Challenged Regulations interfere with the implementation of Florida's medical marijuana program. By coercing individuals such as Franklin against participating in that program, those laws prevent Florida from giving it "practical effect." *See United States v. McIntosh,* 833 F. 3d 1163 (9th Cir. 2016); *U.S. v. Bilodeau,* 24 F. 4th 705, 714 (1st Cir. 2022). As pled, Commissioner has jurisdiction over significant[2] portions of that program. Such interference is the functional equivalent to the injury found when federal law has precluded states from enforcing their legal code. *See Wyoming ex. rel. Crank v. U.S.,*

---

[2] The Defendants declare that Commissioner has "minimal involvement" in the Florida medical marijuana program. *Memorandum*, p. 9. Clearly, this comment itself reflects that the Defendants do not read this portion of the Amended Complaint in the light most favorable to the Plaintiffs. Further, the Plaintiffs do not dispute that the Florida Department of Health oversees most of the various aspects of that program. However, they do not accept or agree that the areas Commissioner and FDACS oversee or the responsibilities they are tasked with are somehow insignificant. For example, FDACS regulates the procedures for growing medical marijuana, which is hardly tangential to the sale and use of that product. *See* § 381.986(8)(b)2, Fla. Stat. If the Defendants maintain that this is too "minimal" for standing purposes, then that consideration in and of itself constitutes a dispute of fact that precludes dismissal or summary judgment.

539 F. 3d 1236, 1241-1242 (10th Cir. 2008) *citing Massachusetts v. E.P.A.,* 127 S. Ct. 1438, 1454 (2007). At the very least, as discussed further below, whether the state medical marijuana laws have been interfered with, and the extent and effect of the same, is a factual issue that should be determined on the merits.

The Defendants imply that only the Florida Attorney General could properly advance the argument that the Challenged Sections and Challenged Regulations interfere with Florida law. *Memorandum*, pg. 13. They cite to no law specifically stating this. Further, this argument ignores a recent Supreme Court discussion of state actors and interests. In *Berger v. North Carolina State Conference of the NAACP*, state legislative leaders sought to intervene in defense of a state law that was facing a constitutional challenge. 142 S. Ct. 2191 (2022). The Court recognized that, "when a State chooses to allocate authority among different officials who do not answer to one another, different interests and perspectives, all important to the administration of state government, may emerge." *Id.* at 2201. Regardless of the reason why the Florida Attorney General has not taken action in this matter, the role of that position to generally defend state law does not divest Commissioner of her official interests in this area any more than they would the legislative leaders in *Berger.*

As it relates to Franklin, the Defendants simply ignore the cited Supreme Court precedent supporting his standing. In *Lake Carriers' Ass'n v. MacMullan,* the

8

Court held that when "compliance is coerced by the threat of enforcement," a plaintiff has alleged a sufficiently immediate injury for standing purposes. 406 U.S. 498, 508 (1972). *See also Keller v. City of Fremont*, 719 F. 3d 931, 947 (8th Cir. 2013) *and National Rifle Ass'n v. Magaw*, 132 F. 3d 272, 290 (6th Cir. 1997). This is precisely what Franklin has pled. *Amended Complaint*, ⁋ 37, 81, 82, 107, 116.

The Defendants do not and cannot dispute that the Challenged Sections and Challenged Regulations would legally require Franklin to give up any firearms he possesses the moment he registered for the Florida medical marijuana program. As pled, those federal laws have been enforced against Cooper and Hansell to deny them their right to possess a firearm on that basis. *Id.*, ⁋ 31, 34. Due solely to this clear and imminent enforcement, Franklin will not participate in that program. *Amended Complaint*, ⁋ 37, 81. This fits cleanly into the precedent cited in the Amended Complaint and herein.[3]

## The Plaintiffs Have Standing to Raise their Rohrabacher-Farr Amendment Claims

The Defendants argue that all Plaintiffs lack standing to raise their Rohrabacher-Farr claims. The Defendants assert that the Plaintiffs have not alleged

---

[3] The Defendants cite *Bradley v. United States* to support their argument that Franklin lacks standing. 402 F. Supp. 3d 398, 400-401 (N.D. Ohio 2019). First, that decision also does not account for *Lake Carriers* and its progeny. Second, it is not clear that the plaintiff in that case pled that he was affirmatively coerced against participating in his state's medical marijuana program due to the federal laws at issue. Here, Franklin has so pled.

that they will be prosecuted pursuant to the Challenged Sections or Challenged Regulations. *Memorandum*, pg. 15. This appears to be the totality of their argument on standing in this area.

However, this argument misinterprets and misapplies the Amended Complaint. The Plaintiffs' argument is that the Rohrabacher-Farr Amendment precludes the Defendants from spending any money to enforce laws that prevent medical marijuana patients from purchasing or possessing firearms. For example, Cooper and Hansell were not allowed to purchase firearms because of their response to a question on Form OMB No. 1140-0020. *Amended Complaint*, ⁋ 31, 34. That form is the Defendants' promulgated interpretation of the Challenged Sections and other Challenged Regulations. *Id.*, ⁋ 6, 7. The Defendants are expending funds on such enforcement, including promulgating the Challenged Regulations. *Id.*, ⁋ 73. The Defendants recognize that preventing medical marijuana patients from purchasing guns is the issue at hand, and they advance their substantive argument relating to it. *Memorandum*, pg. 34-36.

With this in mind, there can be no reasonable question as to the Plaintiffs' standing in this area. As with the Second Amendment claims, Cooper and Hansell have suffered a clear injury because the Challenged Sections and Challenged Regulations were enforced in a manner that prevented them from purchasing a firearm. *Amended Complaint,* ⁋ 31, 34. If the Defendants were not permitted to

expend funds to enforce these laws, then Cooper and Hansell's attempted purchases would not have been denied.[4] Further, if the Defendants did not expend money to enforce the Challenged Sections and Challenged Regulations, then Franklin would be able to join the Florida medical marijuana registry without having to forfeit his firearms. Accordingly, he would no longer be coerced against participating in that program.

Commissioner's standing, in her official capacity, is also clear. Although *McIntosh* and *Bilodeau* relate to the punishment of individuals, Rohrabacher-Farr is generally concerned with harm to state medical marijuana programs themselves. Prosecuting state-compliant individuals violates that proviso because it prevents a state from "giving practical effect" to its own laws. *Bilodeau*, 24 F. 4th at 714. As stated and pled, Commissioner and FDACS are tasked with giving at least significant portions of Florida's medical marijuana laws effect. If they cannot practically do so, as the courts in *McIntosh* and *Bilodeau* reasoned, then Commissioner has been injured in the same manner discussed above.

---

[4] If the Defendants dispute this, then that only bolsters the need for evidence on this point and a consideration on the merits.

## <u>The Plaintiffs Have Sufficiently Pled their Second Amendment Claims</u>

The Defendants' theory appears to be that there is no legal distinction between state-law-compliant medical marijuana patients and participants in the illicit drug market. They contend that Cooper and Hansell, who take medical marijuana only because their state and federal governments have made clear there will be no criminal punishment for doing so, are no more "law abiding" than those who act in a manner they know subjects them to arrest and prosecution. Instead of offering any support for this position, the Defendants simply lump Cooper and Hansell in without further justification.

The Defendants' reliance on *Daniels* embodies this position. That case was a facial challenge to the Challenged Sections by a criminal defendant who admitted to the state-and-federally illegal use of marijuana. *See* "Defendant's Memorandum in Support of Motion to Dismiss," S.D. Miss. Criminal Case No. 1:22cr58LG-RHWR (ECF No. 25), pg. 1. This case expressly does not challenge the Challenged Sections or Challenged Regulations as they relate to participants in the illicit drug trade.

The Defendants' position in this area has no legal or logical support. The Defendants seek to paint Cooper and Hansell's participation in their state medical marijuana program as wholly criminal. Yet, they do not dispute that, pursuant to federal law, those Plaintiffs cannot be arrested or prosecuted for their state-compliant

medical marijuana use.[5] As Justice Thomas has noted, the Defendants "simultaneously tolerate[ ] and forbid[ ]" medical marijuana use. *Standing Akimbo*, 141 S. Ct. at 2236-2237. There is no historical analogue (or, from what the Plaintiffs can surmise, any analogue at all) for an action being both criminal and legally protected at the same time.

Accordingly, the Court should reject outright the position that Cooper and Hansell are not "law-abiding" in the context discussed in *Bruen* and *Heller*. Whereas illegal drug users such as the *Daniels* defendant evidence a guilty mind and disregard for legal consequences, the Plaintiffs display the opposite. They take only those actions that their state has made legal and that the Defendants have decided to legally protect. There is no historical context in which such actions would be viewed as anything other than law abiding.

---

[5] The Defendants' position on this matter begs a fairly obvious question: what is the purpose of the Rohrabacher-Farr Amendment? Specifically, should eligible citizens take from it that federal law effectively grants them permission to participate in their state medical marijuana program, so long as they comply with state law? The First Circuit appears to read it in that manner, as it recently found that Congress "presumably" passed that provision "with an awareness of the beneficial consequences that those steps will have for consumers who seek to obtain medical marijuana." *See NE Patients Group v. United Cannabis Patients and Caregivers of Maine*, 2022 WL 3442203, *9 (1st Cir. Aug. 17, 2022). If the Defendants contend that a reasonable person could or would not interpret Rohrabacher-Farr as seeking to promote and protect the use of medical marijuana, then they owe it to the Court to explain the effect and purpose they believe that proviso actually has.

At the least, there is a factual dispute regarding whether Cooper and Hansell are "law-abiding" for Second Amendment purposes. Neither *Bruen*, *Heller*, nor any of the other related case has offered any context for what it means to fit this definition. At least one federal court has recently refused to take from *Bruen* a "qualification that Second Amendment rights belong only to individuals who have not violated any laws." *See U.S. v. Jackson*, 2022 WL 3582504 (W.D. Oklahoma Aug. 19, 2022). Even if that were the case, the Defendants would have to show an analogous situation in or around 1791 or 1868 where a person who only took actions for which they could not be criminally punished would be considered not "law-abiding." The Defendants' cannot do so and have failed to carry their burden.

The Defendants seek to minimize the Rohrabacher-Farr Amendment's impact in this area by arguing that someday it may not be renewed. This is hardly a significant or relevant legal point. Congress could choose to change any number of laws at any time. If it does so, then any affected citizen must determine whether they should change their behavior or actions in response to it. As pled, Cooper and Hansell only use medical marijuana due to the protections that both state law and the Rohrabacher-Farr Amendment provide. *Amended Complaint*, ¶ 29, 32. Accordingly, if that federal protection disappeared, then they (and many others) would have to reconsider their participation in Florida's program. Unless that occurs, the

14

Defendants cannot simply sweep aside the Rohrabacher-Farr Amendment's significance.

The Defendants' historical analogies also stray far from the face of the Amended Complaint. They compare Cooper and Hansell to "the mentally ill and panhandlers." *Memorandum*, p. 25. They support this by citing to laws disarming "lunatics" and "those of unsound mind." *Id.* However, there is nothing in the Amended Complaint even suggesting that Cooper and Hansell's state-complaint medical marijuana use has rendered them mentally unfit or caused them to beg for loose change. Clearly, implying such things about these Plaintiffs is far from reading the pleadings in the light most favorable to them. If the Defendants wish to make such serious accusations regarding Cooper and Hansell, then they must prove them through evidence. Asking the Court to simply categorize them that way without having to offer any proof runs afoul of clear precedent regarding motions to dismiss Further, it is repugnant for the Defendants to categorically label the Plaintiffs and the over 745,000 qualified medical marijuana patients of Florida in that manner.

The Defendants also misapply the required historical analysis from *Bruen* in significant ways. Although the Plaintiffs agree that the Defendants need not show a "historical twin" for the Challenged Sections and Challenged Regulations, the Defendants' proposed "historical analogue[s]" stray too far from the laws at issue. *Id.* at 2133. They seek to rely upon the historical concept that, generally, the

government has sought to disarm those it viewed as dangerous. *Memorandum*, pg. 23-25. This included discriminatory laws disarming Catholics and Native Americans, as well as regulations targeting the "mentally ill," "panhandlers" and those who do not swear allegiance to their nation. *Id.* Nothing in the Amended Complaint suggests that Cooper or Hansell fit into any such category. The Defendants offer no historical evidence supporting an analogy between state-compliant medical marijuana patients and historically disarmed persons.

Preventing public gun violence and danger is a "general societal problem that has persisted" since 1791. *Bruen*, 142 S. Ct. at 2131. The Defendants cannot meet their burden in this matter if that general issue was addressed through "materially different means." *Id.* The Defendants offer nothing to show that any laws during the pertinent time period sought to prevent the general use of medical marijuana or any other substance as a means of curbing violence. In fact, they do not attempt to show that such use was considered at all related to dangerous behavior. As the Amended Complaint makes clear, medicinal use of marijuana was widely accepted prior to at least the Marihuana Tax of 1937. *Amended Complaint*, ¶ 9, 47-50. The Defendants do not dispute this.

The Defendants cite to *Daniels* and a string of cases for the proposition that at least the Challenged Sections have been previously upheld pursuant to the required historical analysis. *Memorandum*, pg. 20-21. Even a cursory review of

those cases dispels that position. *U.S. v. Seay* was a facial challenge brought by a wholly-illegal drug user. 620 F. 3d 919 (8th Cir. 2010). That Court held that this law survived because it had the "same historical pedigree" as other regulations adopted in the Gun Control Act of 1968. *Id.* at 925. As *Bruen* makes clear, the fact that a regulation was adopted in the late Twentieth Century is of no import if it does not have a historical analogue in or around 1791 or 1868. *U.S. v. Richard* glosses over the question of history, stating simply that Second Amendment rights are "subject to appropriate restrictions" like the Challenged Sections. 350 Fed. Appx. 252, 260 (10th Cir. 2009). That court appeared to ground this in the language from *Heller* that "longstanding prohibitions on the possession of firearms by felons and the mentally ill" are appropriate. *Id. citing Heller*, 128 S. Ct. at 2816-2817. *Richard* does not offer any historical analysis or discussion of why those regulations are analogous to disarming marijuana users, however.

The Defendants appear to lean most heavily on *U.S. v. Yancey* for historical support. 621 F. 3d 681 (7th Cir. 2010). As the Amended Complaint and *Yancey* both make clear on their face, that case was decided based on the now-defunct intermediate scrutiny test. *Amended Complaint*, ¶ 62-63; *Yancey*, 621 F. 3d at 683. This case also, once again, did not relate to medical marijuana. Further, the "historical support" for disarming marijuana users cited in that case again only dates

to the late Twentieth Century. *Id.* at 683-684. Although *Yancey* notes that many states passed similar laws around that time, this is irrelevant to a *Bruen* analysis. *Id.*

The Defendants also rely upon *Yancey*'s apparent conclusion that disarming non-medical marijuana users is akin to historical regulations relating to felons and the mentally ill. *Id.* at 683-685. As has been and will be discussed, the Defendants can make no showing that state-compliant medical marijuana patients are equivalent to such persons. Deeming Cooper and Hansell to be felons or mentally ill also does not take the facts pled in the Amended Complaint as true or construe that pleading in the light most favorable to the Plaintiffs.

Specifically, as it relates to felons, the law is clear that a first-time federal marijuana conviction is a <u>misdemeanor</u>. *See* 21 U.S.C. § 844(a); *see also Amended Complaint*, ⁋ 99 and *Memorandum*, pg. 6. There is nothing in the Amended Complaint suggesting that any of the Individual Plaintiffs have any criminal history, let alone any previous federal marijuana convictions. The Defendants also cite nothing to this effect. Accordingly, even reviewing the pleadings in the light most favorable to the Defendants, the Individual Plaintiffs are, at worst, comparable to federal misdemeanants.

The Defendants certainly agree there is a distinction between felons and misdemeanants. The majority of federal misdemeanants do not lose their gun rights even following a criminal conviction. *See* Section 922(d)(1)*; see also* Amended

Complaint, ¶ 99. Case law also recognizes this clear and obvious point. *See Folajtar v. Att'y Gen. of the U.S.*, 908 F. 3d 897, 903 (3d Cir. 2020) ("…when a legislature chooses to call a crime a misdemeanor, we have an indication of non-seriousness that is lacking when it opts to use the felony label."); *see also Binderup*, 836 F. 3d at 353 n. 6.  The Defendants go far beyond any logical breaking point in trying to fit Cooper and Hansell into a category they know does not apply to them.

The most favorable reading of the Amended Complaint for the Plaintiffs is that Hansell and Cooper have no history of violence, no criminal history, and have lost their gun rights due simply to their medical use of a product that was historically legal and currently does not subject them to state or federal arrest or prosecution. There is no historical analogue for such a deprivation of rights. The Defendants have not shown that the Challenged Sections or Challenged Regulations are in any way "consistent with the Nation's historical tradition of firearm regulation. *Id.* at 2135.

The Defendants attempt to get around their lack of historical support by blurring the line between general use and intoxication. *Memorandum*, pg. 25-27. The Plaintiffs state plainly that they are not challenging any restriction precluding a person from using a firearm while under the influence of marijuana or any other substance. *Amended Complaint*, ¶ 54. This is materially different from the question of whether a person's use of such a substance generally (especially one that does not

subject them to arrest or prosecution) renders them so dangerous as to forfeit a Constitutional right. The Defendants offer no historical support for such a position.

This portion of the Defendants' argument disproves their own position. As stated previously, the government must show a "well-established and representative analogue" for a regulation to pass Second Amendment muster. 142 S. Ct. at 2133. When a "general societal problem" existed during the pertinent historical periods, the lack of a "distinctly similar historical regulation" is evident that the regulation is improper. *Id.* at 2131. The Defendants' citations make clear that keeping firearms out of the hands of those who were intoxicated was a societal issue that states and colonies historically sought to deal with through firearm regulations. However, the Defendants can point to no law from or near that time that fought intoxication by wholly disarming individual who generally drank alcohol, used marijuana, or ingested any other substance. Instead, the cited historical regulations they sought to keep firearms out of individuals' hands while they were under the effect of the substance. The Challenged Sections and Challenged Regulations go far beyond that and cannot reasonably be seen as analogous pursuant to *Bruen*.

Similarly, the Defendants seek to compare state medical marijuana patients to "alcoholics," a group they claim has been historically disarmed. *Memorandum*, pg. 21, 27. At the very least, comparing Cooper or Hansell to alcoholics is not the most favorable reading of the Amended Complaint. Nothing is pled that even infers that

either of them have lost any will power or control as it relates to medical marijuana. Nor was it implied that either is chronically abusing that substance. If the Defendants wish to make this comparison, then they must prove through evidence that Cooper and Hansell are comparable to such persons.

Further, the Challenged Sections and Challenged Regulations go far beyond anything that could apply to an alcoholic or chronic drug abuser. As discussed in the Amended Complaint, 27 C.F.R. § 478.11 deems any person an "unlawful user" of controlled substances if they have consumed it within "a matter of days or weeks." *Amended Complaint*, ⁋ 43. Accordingly, frequent use of marijuana is not required to meet this standard. In fact, the Defendants contend that simply having a medical marijuana card puts a person into this category, even if that person does not actually consume marijuana. *See Wilson v. Lynch*, 835 F. 3d 1083 (9th Cir. 2016) (holding that even a medical marijuana cardholder who pled they received that card solely for First Amendment speech purposes was prohibited from possessing a firearm). The Defendants are fully aware that this defense does not fit or relate to the laws at issue in this proceeding.

Essentially, the Defendants argue that Franklin would become the equivalent of an alcoholic or a lunatic the second he joins the medical marijuana registry. This would be true no matter whether he ever actually takes medical marijuana, how frequently he does so, or whether that use changes anything about his physical or

mental health. If you were to later leave the registry, his competency would be magically restored. They ask the Court to simply accept this reasoning without requiring any evidence or critical thought. Even if some Courts may have simply adopted such a sweeping proposition pre-*Bruen*, this Court cannot properly do so. Rather, it must hold the Defendants to their evidentiary burden of proving that such a position has a historical analogue.

The Defendants stretch further by arguing that state-compliant medical marijuana patients cannot be "trusted" to possess guns and not use them while intoxicated. *Memorandum*, pg. 31-32. The Defendants offer no legal or historical support for such a government trustworthiness test. Rather, they offer policy reasoning of the type that *Bruen* expressly forbids. *See* 142 S. Ct at 2129 *citing McDonald v. City of Chicago*, 561 U.S. 742, 790-791 (2010). Without some analogous regulation in or around the pertinent time periods deeming anyone untrustworthy or having poor judgment on the sole basis of their general marijuana use or similar action, the Defendants do not meet their burden under *Bruen*.

The Defendants' cast their search for a historical analogue wider still, relying on the so-called "virtuous citizen" theory for disarming medical marijuana patients. *Memorandum*, pg. 21, 23. However, even the case law the Defendants cite in this area offers no support for the issue at hand. Those cases note that this theory excludes "felons and felon-equivalents from the Second Amendment's ambit." *Folajtar v.*

*Att'y Gen. of the U.S.*, 980 F. 3d 897, 902 (3d Cir. 2020) *citing Binderup*, 836 F. 3d at 348 (emphasis added); *see also Hamilton v. Pallozzi*, 848 F. 3d 614, 625 n. 9 (4th Cir. 2017) *and Medina v. Sessions*, 279 F. Supp. 3d 281, 290 (D.C. Cir. 2017).[6] As stated previously, the Defendants cannot argue that Cooper or Hansell are felons or felon-equivalents. Therefore, this theory is inapplicable to them.

Further, to the extent the Defendants read this theory and the case law discussing it as deeming persons beyond those convicted of felonies or violent crimes to be "unvirtuous," such a theory would conflict with the holdings in *Heller* and *Bruen*. Those decisions held that the Second Amendment "codified a pre-existing right" that inherently belongs to individuals. *Heller*, 554 U.S. at 594-595; *Bruen*, 142 S. Ct. at 2127. As current Supreme Justice Amy Coney Barrett concluded, the idea that a person could be deemed "unvirtuous" in this manner is "closely associated with pre-*Heller* interpretations of the Second Amendment" which "rejected the view that the Amendment confers an individual right and instead characterized the right as a 'civic right'" *Kanter v. Barr*, 919 F. 3d 437, 465 (Barrett,

---

[6] One exception to this would be the crime of domestic violence, which is often a misdemeanor, but is a basis for the loss of an individual's Second Amendment rights. *See* 18 U.S.C. § 922(g)(9); *U.S. v. Skoien*, 614 F. 3d 638 (7th Cir. 2010). Two federal courts have recently upheld this prohibition pursuant to *Bruen* because the violent nature of domestic abuse renders it equivalent to felony conduct and to the type of dangerous actions that historically led to disarmament. *See Jackson*; *U.S. v. Nutter*, 2022 WL 3718518 (S.D. West Virginia, Aug. 29, 2022). However, unlike domestic violence, state-compliant medical marijuana does not involve violence in any way. Accordingly, this these justifications do not apply to Cooper or Hansell.

A. dissenting) *citing Binderup*, 836 F. 2d at 371 (Hardiman, J. concurring in part and concurring in judgments); *see also Folajtar*, 980 F. 3d at 912-914 (Bibas, J. dissenting) ("...the limit on the Second Amendment right was pegged to dangerousness, not some vague notion of 'virtue'") *and* Greenlee, Joseph G.S. (2020) "The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms," *Wyoming Law Review:* Vol. 20: No. 2, Article 7, p. 282. Now-Justice Barrett noted further that, "it is one thing to say that certain weapons or activities fall outside the scope of the right," but "another to say that certain <u>people</u> fall outside the Amendment's scope." *Kanter*, 919 F. 3d. at 452 (emphasis included in opinion). To the extent the Defendants disagree, it is imperative that they explain why, how, and on what basis (outside of a conviction for a felony or felony-equivalent crime) the government may properly deem a person so "unvirtuous" as to lose this pre-existing right.

## <u>The Defendants' Motion for Summary Judgment Regarding the Second Amended Claims Must be Denied</u>

Factual evidence disputing the hypothesis that medical marijuana patients are violent has already been provided to the Court and the Defendants. As cited in the Plaintiffs' original complaint, a 2013 study from the RAND Drug Policy Research Center, which the Office of National Drug Control Policy commissioned, concluded that there is "little support for a contemporaneous, causal relationship between" the use of marijuana "and either violent or property crime." *See* "Improving the

Measurement of Drug-Related Crime," (ECF No. 1-D, pgs. IV, 9.) That same study concluded that "marijuana does not induce violent crime." *Id.* Instead, this study concluded that "the hard drug trade and the firearms that protect it, rather than drug use *per se,* are responsible for most of the systemic crime related to drugs." *Id.*, pg. 109. This point illustrates why it is inappropriate to conflate medical marijuana patients with those engaged in the state-and-federally illegal drug trade. The latter group must avail itself of ancillary gun violence whereas the former group does not.

The Defendants' claims regarding marijuana and violence are also contradicted by Attorney General Merrick Garland's sworn testimony to Congress earlier this year. In written testimony provided to Senator Brian Schatz, Attorney General Garland stated that the Department of Justice's resources "are not put to their best use prosecuting nonviolent, low-level marijuana offenses, even in jurisdictions where marijuana use remains illegal." *See* "Responses to Questions for the Record Submitted From Senator Schatz," pg. 1. In states with regulated medical marijuana programs, he testified, "there is even greater reason" to conserve resources in order to focus on "violent crimes and other crimes that cause societal harm and endanger our communities." *Id.*

There is no way to square these statements with the position the Defendants advance in this case. They argue to this Court that even state-compliant marijuana use makes an individual too dangerous and unfit to possess a firearm. Yet, Attorney

General Garland testified that state-illegal marijuana use is "nonviolent." Beyond that, he swore that marijuana use is not amongst the crimes that cause "societal harm" or danger. This embodies the Defendants' "half-in, half-out" marijuana policies that have created a "contradictory and unstable state of affairs." *Standing Akimbo*, 141 S. Ct. at 2236-2237. At the least, there is a dispute of fact as to whether the Defendants themselves believe that marijuana use leads to violence or other serious crime.

Further, pertinent crime statistics show that Florida has experienced a larger or statistically equivalent drop in violent crime rates compared to the nation as a whole even as medical marijuana use increased throughout the state. *See* 2019 Preliminary Semi-Annual Uniform Crime Report, January-June 2019, United States Department of Justice, Federal Bureau of Investigations, Criminal Justice Information Services Division; Table 3: Percentage Change for Consecutive Years (ECF No. 1-E) *and* Crime in Florida Abstract Report, January-December 2019, Florida Department of Law Enforcement (ECF No. 1-F). This statistical evidence contradicts the Defendants' theory regarding medical marijuana use and violence, thus creating a dispute of fact in this area.

The Defendants' arguments regarding "judgement" fair no better. They rely upon language that the Florida Board of Medicine has promulgated stating that medical marijuana can "affect coordination, motor skills, and cognition, i.e., the

26

ability to think, judge, and reason" to support their position that Cooper and Hansell are too dangerous to possess firearms. *Memorandum*, pg. 28-29. Stemming from this, the Defendants reason, such patients cannot be trusted to safely use a firearm even when not using or under the influence of marijuana. *Id.*, pg. 30-31.

First, the Defendants read too much into this guidance. It specifically states that medical marijuana patients should refrain from many activities requiring alertness and quick response "while using medical marijuana." *Id.*, pg. 28-29. Nothing in the referenced form states that the general use of marijuana renders a person too dangerous to ever drive a car, operate heavy machinery, or take similar actions. To the extent the Defendants argue this is the case, the language they rely upon offers no support. Further, the previously cited study showing that there is no "contemporaneous, causal relationship" between marijuana use and violence contradicts this position. *See* ECF No. 1-D, pgs. IV, 9.

Second, this language is standard to many forms of common medication. The U.S. Food and Drug Administration advises that several prescription and over-the-counter drugs may affect motor skills. *"Some Medicines and Driving Don't Mix"* *https://www.fda.gov/consumers/consumer-updates/some-medicines-and-driving-dont-mix* (last visited Sept. 6, 2022). These medicines include, but are not limited to, sleeping pills, medicines that treat diarrhea, medicines that treat motion sickness, and some cold remedies and allergy products. *Id*. Popular sleeping pills such as an

Ambien, also contain many of the side effects as medical marijuana, such as dizziness, anxiety, memory loss, depression, impaired judgment. *"Serious Ambien Side Effects: Memory, Depression, and More."*[7] The fact that a medication may have side effects on a person at the time of use is common and insignificant to the Constitutional question at issue. At the very least, the common nature of these side effects raises a dispute of fact regarding whether they can render medical marijuana patients so uniquely dangerous or untrustworthy as to cost them their Second Amendment rights.

Although the Defendants claim that precedent supports their contentions in this area, they have never actually proven that state-compliant medical marijuana patients are too dangerous or untrustworthy to possess firearms. In *Wilson v. Lynch*, the Defendants did not submit any studies or evidence to support such a showing. 835 F. 3d 1083, 1093 (9th Cir. 2016). Instead, they relied upon two cases which cited to research relating to ties between the illicit drug trade and violence. *Id.; See Yancey*, 621 F. 3d at 686 *and U.S. v. Carter*, 750 F. 3d 462, 466-469 (4th Cir. 2010). *Wilson* noted that the court had "no occasion to evaluate the reliability" of those studies because the Defendants never offered them as evidence. *Id.* Instead, the court

---

[7] https://americanaddictioncenters.org/ambien-treatment/side-effects (last visited Sept. 6, 2022).

accepted those studies "as probative" because the Plaintiff did not challenge them.[8] Based on the RAND study and the crime statistics cited above, the Plaintiffs do challenge and have shown at least a dispute of fact regarding that conclusion. Further, as stated, those studies did not account for differences between the illicit drug trade and state-compliant medical marijuana use.

In this case, the Defendants once again seek a short-cut around their burden of proof. The Defendants have not offered evidence indicating that state-compliant medical marijuana use leads to violence. Instead, they simply ask the Court to do their work for them, by stretching inapplicable cases and studies to fit the Defendants' hypothesis. Even if the Defendants were successful with this at times pre-*Bruen*, the Court should hold them to their burden to prove that state-compliant medical marijuana patients are in some way analogous to those historically deemed too dangerous to possess a firearm.

## The Plaintiffs Have Sufficiently Pled their Rohrabacher-Farr Amendment Claims

The Defendants' attacks on the Plaintiffs' Rohrabacher-Farr claims fail. They note that the Plaintiffs cannot "assert that the mere existence of statutes or regulations" violates this proviso. *Memorandum*, pg. 33-34. The Plaintiffs agree, which is why they did not do so. Rather, they challenged the expenditure of funds to

---

[8] In light of the RAND study cited herein, the Plaintiffs do dispute the reliability of those studies.

enforce the Challenged Sections and Challenged Regulations to prevent state-complaint medical marijuana patients from possessing or purchasing firearms. *Amended Complaint*, ⁋ 136, 137, and Prayer for Relief (pg. 45). The Defendants make no argument that challenging or seeking to restrict the use of funds in this manner is improper.

The remedy the Plaintiffs seek is straightforward and in keeping with applicable precedent. It is not disputed that marijuana use is federally illegal. However, pursuant to the Rohrbacher-Farr Amendment and *McIntosh* and *Bilodeau*'s interpretation of it, the Defendants cannot expend funds to preclude individuals from using it in compliance with their state medical marijuana laws. Pursuant to this count in the Amended Complaint, the legal prohibitions against gun possession and purchasing in the Challenged Sections and Challenged Regulations would stand. However, the Defendants would be unable to expend money to enforce them against state-complaint patients in the same manner that they cannot criminally enforce the illegality of medical marijuana. This is uncomplicated and legally proper.

Attacking yet another straw man, the Defendants argue that their enforcement of these laws would not prevent Florida from implementing its medical marijuana program based on its number of eligible patients. *Memorandum*, pg. 34-35. The Defendants logic appears to be that Florida's enrollment numbers are strong,

30

therefore taking away patients' Second Amendment rights has caused no harm to the program.

This argument both ignores allegations in the Amended Complaint and assumes too much. First, the Plaintiffs have affirmatively pled that Franklin has been coerced against participating in Florida's medical marijuana program due to not wanting to lose his Second Amendment rights. Thus, the idea that citizens are choosing not to participate in the state's program for that reason is not just a hypothetical. Second, the question of whether this punishment precludes eligible Floridians from participating is clearly one of fact. The Plaintiffs plead facts indicating that it does. *Amended Complaint*, ¶ 74, 105-109, 136-140. To the extent the Defendants do not accept that as true, this question is not ripe for a motion to dismiss.

This argument also goes beyond anything required in relevant precedent. Neither *McIntosh* nor *Bilodeau* considered the enrollment figures of the respective states at issue. In fact, *Bilodeau* noted that "no matter the risks, there would likely be some participants in [a state's] medical marijuana market." 24 F. 4th at 714. In fact, "there have always been participants in the market for unlawful drugs who are undeterred by even life sentences." *Id.* The pertinent question, therefore, is whether the government's action would "skew a potential participant's incentives against entering the market" and "deter the degree of participation in [the state's] market

that [it] seeks to achieve." *Id.* Again, it is beyond dispute that the Challenged Sections and Challenged Regulations have skewed at least Franklin's incentives against entering this market. The most favorable reading of the Amended Complaint is, therefore, that Florida's enrollment numbers have been depressed by the Defendants' use of funds to enforce these laws.

The Defendants ignore this precedent further in arguing that Rohrabacher-Farr is inapplicable to the Challenged Sections and Challenged Regulations because it contains "no language" addressing firearm restrictions. *See* Memorandum, pg. 35. However, that proviso similarly contains no language regarding prosecutions. It refers only to the use of funds to "prevent" states "from implementing" medical marijuana programs. *McIntosh* and *Bilodeau* found that prosecuting individuals for their participation in those programs has that effect. The same is true for the deprivation of rights at issue in this matter.

The Defendants also seek to limit the application of *McIntosh* and *Bilodeau* strictly to criminal prosecution. However, as cited in the Amendment Complaint, *McIntosh* held that, "at a minimum," prosecution for state-compliant action violates Rohrabacher-Farr. 833 F. 3d at 1177. Accordingly, that panel recognized that other actions could have the same violate effect. In this case, the plaintiffs allege not a deprivation of their liberty interests as discussed in *McIntosh* and *Bilodeau*, but of

another core Constitutional right. This is completely in line with the reasoning and purpose of those decisions, and the Defendants offer little to the contrary.

## Section 1983

The Plaintiffs agree that 42 U.S.C. § 1983 does not apply in this case and was improperly cited in the Amended Complaint. This can be easily remedied by either requiring the Plaintiffs to further amend their complaint to delete these references, or by simply ordering that these references be deemed a nullity for purposes of the Defendants answer and any continued proceedings. The Plaintiffs defer to the Court as to the proper remedy for this technical pleading issue.

## Request for Oral Argument

Based on the new legal standard from *Bruen*, the significant Constitutional question at hand, the unique nature of the Plaintiffs' as-applied challenge, and what appears to be an issue of first impression regarding the Rohrabacher-Farr Amendment's application outside of prosecution, the Plaintiffs would respectfully request an oral argument regarding the Defendants' motions. The Plaintiffs estimate that one (1) hour would be sufficient.

WHEREFORE, the Plaintiffs respectfully request that (1) the Court deny the Defendants' motions or, in the alternative, (2) that the Court deny the Defendants' motion for summary judgment and grant the Defendants' motion to dismiss only as it relates to the references to 42 U.S.C. § 1983, that the Plaintiffs be granted 10 (ten)

days to so amend their amended complaint, and that the Defendants then be required

to file an answer within whatever time period the Court deems reasonable.

Respectfully submitted,

/s/ William D. Hall
William D. Hall
Florida Bar No. 67936
Daniel R. Russell
Florida Bar No. 63445
Jordane Wong
Florida Bar No. 1030907
**DEAN, MEAD & DUNBAR**
106 E. College Ave., Suite 1200
Tallahassee, Florida 32301
Tel: (850) 999-4100
Fax: (850) 577-0095
whall@deanmead.com
drussell@deanmead.com
jwong@deanmead.com
kthompson@deanmead.com
*Attorneys for Plaintiffs*

/s/Adam J. Komisar
ADAM J. KOMISAR
Fla. Bar No: 86047
KOMISAR SPICOLA, P.A.
Adam@KomisarSpicola.com
P.O. Box 664
Tallahassee, Florida 32302
Telephone No.:  (850) 328-4447
Fax No.: (850) 320-6592
www.KomisarSpicola.com
Co-Counsel for Plaintiff Nicole Hansell
CAMINEZ & YEARY, P.A.

/s/ Ryan A. Yeary
Ryan A. Yeary
Florida Bar No.: 71261
Kareem Todman
Florida Bar No. 109295
1307 South Jefferson Street
Monticello, Florida 32344
(850) 997-8181 - Phone
(850) 997-5189 – Facsimile
ryeary@caminezlaw.com
ktodman@caminezlaw.com
service@caminezlaw.com
Co-Counsel for Plaintiff Neill Franklin

## <u>CERTIFICATE OF WORD COUNT</u>

I HEREBY CERTIFY that this memorandum complies with Local Rule 7.1(F) because it contains 7,809 words, as calculated using Microsoft Word and excluding the case style, signature block and certificate of service.

/s/ *William D. Hall* _____
William D. Hall

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 7, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *William D. Hall* _____
William D. Hall