IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

NICOLE FRIED, et al.,

      Plaintiffs,

v.                              Case No. 4:22-cv-164-AW-MAF

MERRICK GARLAND, et al.,

      Defendants.

_____/

## ORDER OF DISMISSAL

Federal law prohibits certain people from possessing firearms. 18 U.S.C. § 922(g). Among them are convicted felons, fugitives from justice, and—relevant here—anyone "who is an unlawful user of or addicted to any controlled substance." *Id.* As the parties agree, Florida's medical marijuana users are "unlawful user[s] of . . . [a] controlled substance," so this law makes it a crime for them to possess firearms. The primary issue in this case is whether the Second Amendment allows this result.

### I.

### A.

In 2016, Florida stopped criminalizing the medical use of marijuana. Many people refer to this change as Florida's "legalizing" medical marijuana, but Florida did no such thing. It couldn't. "Under the Supremacy Clause of the Constitution, state laws cannot permit what federal law prohibits," *United States v. McIntosh*, 833

F.3d 1163, 1179 n.5 (9th Cir. 2016), and federal law still prohibits possession of marijuana—for medical purposes or otherwise, *see* 21 U.S.C. §§ 841(a), 844(a); *see also* 21 U.S.C. § 812, Sch. I(c)(10), § 812(b)(1)(B). Indeed, federal law "designates marijuana as contraband for *any* purpose" and "prohibit[s] entirely [its] possession." *Gonzales v. Raich*, 545 U.S. 1, 24, 27 (2005).[1]

So while Florida (like many states) has decided *it* will no longer criminalize medical marijuana, the simple fact is that "[a]nyone in any state who possesses, distributes, or manufactures marijuana for medical or recreational purposes . . . is committing a federal crime." *McIntosh*, 833 F.3d at 1179 n.5.

As anyone driving by Florida's many marijuana dispensaries can see, though, federal law is not always enforced. In fact, through a series of appropriations riders—frequently called the Rohrabacher-Farr Amendment—"Congress has prohibited the Department of Justice from 'spending funds to prevent states' implementation of their own medical marijuana laws.'" *See Standing Akimbo, LLC v. United States*, 141 S. Ct. 2236, 2237 (2021) (Thomas, J., respecting the denial of certiorari) (quoting *McIntosh*, 833 F.3d at 1175-77)). So Congress has precluded the Department of Justice (for now) from prosecuting crimes that Congress (for now)

---

[1] There is an exception, not relevant here, for "use of the drug as part of a Food and Drug Administration preapproved research study." *Gonzales v. Raich*, 545 U.S. 1, 14 (2005).

chooses to maintain on the books. *Cf. id.* at 2236-37 (Thomas, J.) (explaining that "the Federal Government's current approach is a half-in, half-out regime that simultaneously tolerates and forbids local use of marijuana").

Three Plaintiffs want to participate in Florida's medical marijuana system while possessing guns. But as things stand, their use of medical marijuana—their "unlawful use[] . . . of a controlled substance"—makes any gun possession a felony, punishable by up to 15 years in prison. *See* 18 U.S.C. § 924(a)(8). That is the situation Plaintiffs challenge. They contend that this violates their Second Amendment right to keep and bear arms. And they contend a federal firearms prosecution would violate the Rohrabacher-Farr Amendment.

## B.

Plaintiffs are Florida Commissioner of Agriculture Nicole Fried (the "Commissioner"), and three individuals who want to use medical marijuana and possess guns. The Commissioner oversees the issuance of Florida's concealed carry licenses and separately oversees the agriculture-related aspects of Florida's medical marijuana program. ECF No. 12 (Am. Compl.) ¶¶ 25-27. Plaintiffs Vera Cooper and Nicole Hansell currently participate in Florida's medical marijuana program. *Id.* ¶¶ 29-30, 32-33. They want to purchase firearms for personal protection, and they unsuccessfully tried to do so. *Id.* ¶¶ 31, 33-34. After they acknowledged on ATF forms that each was "an unlawful user of, or addicted to, marijuana . . . or any other

controlled substance," they were unable to buy guns. *Id.* Plaintiff Neill Franklin is a Florida resident and gun owner. *Id.* ¶¶ 35-37. He has a qualifying medical condition and would like to participate in Florida's medical marijuana program. *Id.* But he is not using marijuana because his gun ownership would expose him to prosecution under the federal laws Plaintiffs challenge. *Id.* ¶ 37.

Defendants are Attorney General Merrick Garland; Director of the Bureau of Alcohol, Tobacco Firearms, and Explosives ("ATF") Steven Dettelbach; and the United States. *See* Am. Compl.[2] The United States and ATF enforce the criminal laws at issue, and ATF promulgated the regulation defining "[u]nlawful user." ECF No. 14 at 15.[3] ATF also created the form mentioned above. *Id.* (citing Form 4473). The form asks if the transferee is "an unlawful user of . . . marijuana," and it warns that "[t]he use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside." ECF No. 12-2 at 2.

Plaintiffs bring four counts. Counts I and II seek declaratory and injunctive relief based on the Second Amendment. Plaintiffs specifically challenge 18 U.S.C. § 922(g)(3) and (d)(3), ATF Form 4473, and 27 C.F.R. § 478.11, which together

---

[2] The First Amended Complaint named Gary M. Restaino, who was then the Acting ATF Director. Steven Dettelbach has since become director and is automatically substituted as a defendant. Fed. R. Civ. P. 25(d).

[3] All page citations are to the CM/ECF page numbers.

prohibit the purchase or possession of firearms by medical marijuana users. Section 922(g)(3) prohibits unlawful drug users from possessing firearms. And § 922(d)(3) prohibits selling them firearms.

Counts III and IV seek declaratory and injunctive relief based on the Rohrabacher-Farr Amendment. That provision prohibits the Department of Justice from using appropriated funds "to prevent [States] from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, § 531, 136 Stat. 49 (2022).[4]

Defendants moved to dismiss, ECF No. 13, contending that Plaintiffs lack standing and have not stated a claim for relief, ECF No. 14 at 12. Plaintiffs responded, ECF No. 15, and the court held a hearing. Having carefully considered the parties' arguments, I now grant the motion to dismiss. As explained below, I conclude that Plaintiffs have standing but that their claims fail on the merits.

## II.

"Because standing to sue implicates jurisdiction, a court must satisfy itself that the plaintiff has standing before proceeding to consider the merits of her claim,

---

[4] This provision expired on September 30, 2022, but its substance remains effective under a new continuing resolution. *See* Continuing Appropriations and Ukraine Supplemental Appropriations Act, 2023, Pub. L. No. 117-180, 136 Stat. 2114 (effective September 30, 2022) (generally providing continued funding subject to same restrictions).

no matter how weighty or interesting." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc). To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). At this stage, Plaintiffs "must 'clearly allege facts demonstrating' each element" of standing. *Id.* (cleaned up) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). And they must show the elements of standing for each separate claim. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008),

The government concedes that Cooper and Hansell have standing for their Second Amendment claim. I nonetheless examine the issue because federal courts must independently ensure they have jurisdiction. *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

Plaintiffs allege that Cooper and Hansell could not buy firearms because they are "unlawful users" of marijuana. *Id.* ¶¶ 30-31, 33-34. They also allege that Defendants enforce the laws that keep Cooper and Hansell from purchasing firearms. *Id.* This is enough to plead injuries fairly traceable to Defendants' actions. And a favorable decision would redress those injuries by allowing Cooper and Hansell to purchase and possess firearms. Cooper and Hansell have standing as to this claim.

Because "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement," *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006), I need not address the remaining Plaintiffs' standing. Still, the government argues (and with some force) that the Commissioner lacks standing because she alleged no cognizable injury. ECF No. 14 at 22-24; ECF No. 16 at 7-10. And it insists I should determine the Commissioner's standing now because the scope of available relief depends on who brings the claim. *See* ECF No. 16 at 7-8 (arguing that "the scope of any injunction may be narrower if no state official is a plaintiff"). But a court can tailor the scope of the relief at the remedy phase, if necessary. *See Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019). For now, it is enough that at least one plaintiff has standing for the Second Amendment claim.

At least one Plaintiff also has standing for the Rohrabacher-Farr Amendment claim, notwithstanding the government's contrary argument. The Amended Complaint alleges that Franklin wants to participate in Florida's medical marijuana program but will not do so because, as a gun owner, his using marijuana could lead to his criminal prosecution. Am. Compl. ¶¶ 37, 81. That suffices as an injury. *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 15-16 (2010) (finding that threat of prosecution qualified as injury for Article III purposes and that the "Government has not argued to this Court that plaintiffs will not be prosecuted if they do what they

say they wish to do"). And it is fairly traceable to Defendants' conduct. After all, Defendants' spending to enforce the law is what would cause Franklin's claimed injury. Finally, enjoining Defendants from spending to enforce the challenged regulation would redress Franklin's injury. He could participate in Florida's program without facing prosecution (at least for now) under § 922(g)(3).[5]

Franklin's standing for the Rohrabacher-Farr Amendment claim makes it unnecessary to address others' standing as to that claim. The bottom line is that as to each claim, there is at least one plaintiff with standing. So on to the merits.

## III.

### A.

The Second Amendment guarantees the individual right to possess firearms. *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). Judges, scholars, and others have long debated the extent of this right, and many questions remain unresolved. But the Supreme Court recently clarified that the government cannot

---

[5] Accepting *United States v. McIntosh*, 833 F.3d 1163, 1172-73 (9th Cir. 2016), the government has not contested the court's authority to enjoin potential violations of the Rohrabacher-Farr Amendment. Nor has the government raised any no-private-cause-of-action defense. *Cf. Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("What our cases demonstrate is that, 'in a proper case, relief may be given in a court of equity to prevent an injurious act by a public officer.'" (cleaned up) (quoting *Carroll v. Safford*, 44 U.S. 441, 463 (1845))). The government correctly notes that § 1983 relief is not permissible against federal defendants, ECF No. 14 at 46, but Plaintiffs have abandoned their reliance on § 1983, ECF No. 15 at 33.

restrict the Second Amendment right unless "the regulation is consistent with this Nation's historical tradition of firearm regulation." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2126 (2022). It is not enough to "simply posit that the regulation promotes an important interest." *Id.*

Plaintiffs' basic Second Amendment theory is straightforward: they contend that keeping guns from medical marijuana users is not consistent with any historical tradition of firearm regulation. The government's twofold response is equally straightforward. The government first contends that we need not explore historical traditions because the Second Amendment protects only "law-abiding, responsible citizens"—not federal drug offenders. ECF No. 14 at 26 (quoting *Heller*, 554 U.S. at 635); *see also id.* at 27 ("[P]ersons within Sections 922(d)(3) and (g)(3)'s prohibitions are not 'law-abiding' citizens within the scope of the Second Amendment right defined in *Heller* and *Bruen*."). It separately contends that if Plaintiffs fall within the Second Amendment's scope, the challenged laws pass constitutional muster because keeping guns from drug users *is* consistent with traditional firearm regulation. *Id.* at 31-43. It points to what it says is a tradition of keeping guns from those who engage in criminal activity and from those whose behavior would make their having guns dangerous. *Id.* at 31-32.

As to the government's first point, it is true that the Supreme Court has noted the Second Amendment's protection of "law-abiding, responsible citizens." *Heller*,

554 U.S. at 635.[6] Earlier this year, it reiterated that the Second Amendment "protect[s] the right of an ordinary, law-abiding citizen" to keep firearms. *Bruen*, 142 S. Ct. at 2122. And at the same time, it suggested that States could, consistent with the Second Amendment, require licensure and background checks or safety courses to ensure "that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Id.* at 2138 n.9 (quoting *Heller*, 554 U.S. at 635); *see also United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010) (noting (pre-*Bruen* that a felon's "Second Amendment right to bear arms is not weighed in the same manner as that of a law-abiding citizen, such as the appellant in *Heller*"). It also made a point to note that the petitioners there—"two ordinary, law-abiding, adult citizens"—were unquestionably "part of 'the people' whom the Second Amendment protects." *Bruen*, 142 S. Ct. at 2134.

All of this makes it difficult to dismiss the idea that *non*-law-abiding citizens have no Second Amendment rights. But the government's argument on this point ultimately leads to the same place as its other argument: if there is a history and tradition of keeping guns from those engaged in criminal conduct, then the laws here are constitutional whether the Second Amendment right "belongs to all Americans,"

---

[6] The Eleventh Circuit has concluded that "to the extent that this portion of *Heller* limits the Court's opinion to possession of firearms by law-abiding and qualified individuals, it is not dicta." *United States v. Rozier*, 598 F.3d 768, 771 n.6 (11th Cir. 2010) (emphasis removed).

*Heller*, 554 U.S. at 581, or just to "ordinary, law-abiding citizens," *Bruen*, 142 S. Ct. at 2122. So I will assume for now that Plaintiffs are included in "the people" the Second Amendment protects.[7]

I return, then, to the question of whether laws precluding medical marijuana users from possessing firearms is "consistent with this Nation's historical tradition." *Id.* at 2126. This "historical inquiry . . . involve[s] reasoning by analogy." *Id.* at 2132. And "determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Id.* (quoting C. Sunstein, *On Analogical Reasoning*, 106 Harv. L. Rev. 741, 773 (1993)). Put differently, if there is a tradition of regulation that is relevantly similar to the challenged laws, Plaintiffs have not stated a plausible Second Amendment claim.

Although *Bruen* does not "provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment," it offers some

---

[7] In *Kanter v. Barr*, then-Judge Barrett described the "competing ways of approaching the constitutionality of gun dispossession laws." 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting). She noted that one view is that certain groups (like violent felons) "fall entirely outside the Second Amendment's scope," but that another view is "that all people have the right to keep and bear arms but that history and tradition support Congress's power to strip certain groups of that right." *Id.* at 451-52. Although she expressed a preference for the latter view, she observed that both "approaches will typically yield the same result; one uses history and tradition to identify the scope of the right, and the other uses that same body of evidence to identify the scope of the legislature's power to take it away." *Id.* at 452.

instruction. *Id*. at 2132-33. There are two "*central*" considerations: "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2133.

The government offers two historical analogues. ECF No. 14 at 31-32. It contends that laws have traditionally kept guns from those engaged in criminal activity and from "those whose status or behavior would make it dangerous for them to possess firearms." *Id.* Plaintiffs do not take issue with the existence of these historical traditions; they argue instead that these traditions do not justify the laws as applied to them. ECF No. 15 at 15; *see also* Am. Compl. ¶ 53.

*1.*

As to the first, Plaintiffs do not dispute that there is a tradition of disarming those engaged in criminal conduct. In *Heller*, the Court made clear that nothing in its opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," 554 U.S. at 626, and as noted above, the Court repeatedly described protections of "law-abiding citizens." *See also United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (noting that "*Heller* identified as a 'highly influential' 'precursor' to the Second Amendment the Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania to Their Constituents[, which] report asserted that citizens have a personal right to bear arms 'unless for crimes committed, or real danger of public injury'" (citations omitted)).

Plaintiffs' primary argument as to this tradition is that they are not really engaged in criminal conduct, at least not in the usual sense. They say their marijuana use is "both criminal and legally protected at the same time." ECF No. 15 at 13. They acknowledge (as they must) that federal law criminalizes all marijuana possession—including theirs. They thus make no argument that they are not "unlawful user[s]" for purposes of § 922(g). But they say the Rohrabacher-Farr Amendment precludes their prosecution, making their use akin to lawful conduct.

This argument does not get far. Regardless of whether Plaintiffs are prosecuted (or whether Congress allocates funds for their prosecution), possession of marijuana remains a federal crime. The Rohrabacher-Farr Amendment at best precludes prosecution now; it does not forever bless Plaintiffs' actions:

> To be clear, [the Amendment] does not provide immunity from prosecution for federal marijuana offenses. . . . Congress currently restricts the government from spending certain funds to prosecute certain individuals. But Congress could restore funding tomorrow, a year from now, or four years from now, and the government could then prosecute individuals who committed offenses while the government lacked funding.

*McIntosh*, 833 F.3d at 1179 n.5. Perhaps future prosecution is unlikely, but either way, the Rohrabacher-Farr Amendment does not make marijuana users law-abiding citizens.[8]

---

[8] Plaintiffs take issue with their being "lump[ed]" in with other illegal drug users. ECF No. 15 at 12. And they ask rhetorically what the purpose of the

Plaintiffs also argue that even if they are not technically "law abiding," the government "would have to show an analogous situation in or around 1791 or 1868 where a person who only took actions for which they could not be criminally punished would be considered not 'law-abiding.'" ECF No. 15 at 14. This argument fails not only because Plaintiffs *can* be prosecuted under the law (if not right now), but also because it demands too much specificity in the historical tradition. The government need only "identify a well-established and representative historical *analogue*, not a historical *twin*." *Bruen*, 142 S. Ct. at 2133.

Requiring an analogue with the specificity Plaintiffs demand would arguably prevent the government from restricting *any* illegal drug users from possessing guns. Plaintiffs disclaim any argument that their theory would protect recreational marijuana users (or other illegal drug users), but the enforcement regime for recreational marijuana is unique too. *See* ECF No. 15-1. And if the slim likelihood of federal prosecution for medical marijuana precludes an analogy to historical regulation, then the slim likelihood of federal prosecution for recreational users

_____

Rohrabacher-Farr Amendment is if not to allow medical marijuana users "to participate in their state medical marijuana program, so long as they comply with state law." *Id.* at 13 n.5. Their frustration is perhaps understandable, but it is legally irrelevant. The Rohrabacher-Farr Amendment's purpose presumably is to help (to some extent) people like the Plaintiffs. But Congress did so without removing the criminal prohibitions against all marijuana possession. The result—before and after the Rohrabacher-Farr Amendment—is that Plaintiffs' marijuana possession is a federal crime.

would seem to do the same. *Cf.* ECF No. 15 at 19 (Plaintiffs' arguing that prohibiting gun possession "due simply to their medical use of a product that was historically legal and currently does not subject them to state or federal arrest or prosecution" is not "consistent with the Nation's historical tradition of firearm regulation" (marks and citation omitted)). Because medical marijuana users violate current federal law in the same way that recreational marijuana users do, the historical tradition of keeping guns from law violators applies the same way to both.

I need not explore the outer bounds of this principle. I need not, for example, conclude that *any* unlawful conduct—no matter how trivial—could justify a prohibition on firearms. Regardless of how marijuana laws are now enforced, the fact remains that Congress considered marijuana possession serious business. It determined that marijuana is harmful, with "a high potential for abuse." 21 U.S.C. § 812(b)(1)(A); *see also* ECF No. 14 at 16. Even today, basic possession can lead to a prison sentence of up to a year, and distribution (or possession with intent to distribute) can lead to far more. 21 U.S.C. §§ 844(a); 841(b).

Next, the "modern and historical regulations" keeping guns from those acting unlawfully are comparably justified. *Bruen*, 142 S. Ct. at 2133. Both further the government's longstanding goal of keeping firearms in the hands of law-abiding citizens. And the regulations "impose a comparable burden on the [Second Amendment] right"—in fact, the modern regulation is arguably less onerous than

the historical tradition of disarming those who engage in criminal activity. *Id.* The tradition of disarming criminals usually meant permanently restricting their Second Amendment rights. By contrast, the modern regulation restricts people from purchasing or possessing a firearm only while "a current user of a controlled substance." 27 C.F.R. § 478.11; *see also* § 922(g)(3) (purchase), § 922(d)(3) (possession).[9] This does not categorically ban marijuana users from exercising their Second Amendment rights; the burden exists only as long as marijuana users fit the regulation's definition of a "current user." This is enough to find the regulations "relevantly similar" and foreclose Plaintiffs' Second Amendment claim.

*2.*

The government offers a second historical analogue: the tradition of keeping firearms from "those whose possession of firearms the government deems dangerous." ECF No. 14 at 33. As the government notes, Plaintiffs do not take issue with this general proposition. *Id.* at 33 n.10 (citing Am. Compl. ¶¶ 10, 18). As before, though, Plaintiffs argue that their situation is simply not analogous; they argue specifically that they are not dangerous—at least when not under the influence.

---

[9] A federal regulation defines "unlawful user" to include anyone "who is a current user" of marijuana. 27 C.F.R. § 478.11. "A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm." *Id.* What matters is whether "the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct." *Id.*

(Plaintiffs concede the government may restrict gun possession when they are under the influence, ECF No. 15 at 19 (citing Am. Compl. ¶ 54), a proposition consistent with historical tradition.)

The government points to the history of restricting gun possession of the intoxicated. ECF No. 14 at 35-37. It cites a 1655 Virginia statute, a 1771 New York statute, and several state statutes from the era following ratification of the Fourteenth Amendment. *Id.* at 35-36. Some of these statutes burdened individuals by restricting their ability to carry a gun while intoxicated. *Id.* Others prohibited individuals from firing a gun while intoxicated. *Id.*

The manner in which the modern restriction burdens Second Amendment rights is comparable to how the intoxication statutes burdened those rights. While impaired, the intoxicated could not carry or use firearms (depending on the state statute). Likewise, while an active drug user, one cannot possess firearms. *See* 27 C.F.R. § 478.11. As already explained, unlawful drug users can regain their Second Amendment rights by simply ending their drug use.

The burdens that the challenged regulation and the historical restrictions placed on individuals' Second Amendment rights are also comparably justified. Defendants explain that the government implemented the challenged regulation because "unlawful drug use (including marijuana use) causes significant mental and physical impairments that make it dangerous for a person to possess firearms." ECF

No. 14 at 38; *see also United States v. Yancey*, 621 F.3d 681, 683 (7th Cir. 2010) ("Congress enacted the exclusions in § 922(g) to keep guns out of the hands of presumptively risky people.").[10]

Laws keeping guns from the mentally ill likewise flow from the historical tradition of keeping guns from those in whose hands they could be dangerous. Plaintiffs recoil at being compared to the mentally ill, ECF No. 15 at 1, but one does not have to label marijuana users mentally ill to recognize that both categories of people can be dangerous when armed. Although the prohibition reaches those habitually using marijuana (even if not currently under the influence), habitual drug users are analogous to other groups the government has historically found too dangerous to have guns.

At bottom, the historical tradition of keeping guns from those the government fairly views as dangerous—like alcoholics and the mentally ill—is sufficiently analogous to modern laws keeping guns from habitual users of controlled substances. This provides another justification for upholding the challenged laws.

---

[10] The government cites *United States v. Daniels*, --- F. Supp. 3d ---, 2022 WL 2654232, at *4 (S.D. Miss. July 8, 2022), a recent decision upholding § 922(g)(3) against a similar Second Amendment challenge. ECF No. 14 at 30-31. *Daniels* found "the analysis in *Yancey* demonstrates the historical attestation demanded by the *Bruen* framework," and "show[s] that analogous statutes which purport to disarm persons considered a risk to society—whether felons or alcoholics—were known to the American legal tradition." 2022 WL 2654232, at *4.

\* \* \*

The challenged laws are consistent with the history and tradition of this Nations' firearm regulation. *See Bruen*, 142 S. Ct. at 2126. Plaintiffs therefore have failed to plausibly allege a Second Amendment claim, and Counts I and II must be dismissed.

**B.**

Plaintiffs' remaining claims concern the Rohrabacher-Farr Amendment. Am. Compl. ¶¶ 135-140 (Count III), 141-146 (Count IV). As explained above, the Amendment prohibits DOJ from using appropriated funds to prevent states from implementing their medical marijuana programs. Plaintiffs allege that Defendants' spending (or threatened spending) to enforce the challenged laws prevents Franklin and those like him from participating in Florida's medical marijuana program. Am. Compl. ¶ 137. They seek an order precluding use of funds to prosecute medical marijuana users for firearm possession.

The Rohrabacher-Farr Amendment states:

> None of the funds made available under this Act to the Department of Justice may be used, with respect to [Florida and other states with medical marijuana laws] to prevent any of them from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana.

Consolidated Appropriations Act, 2022, § 531, 136 Stat. at 150-51. And the parties agree that based on the text, the rider "prohibits DOJ from spending money on

actions that prevent the Medical Marijuana States' giving practical effect to their state laws that authorize the use, distribution, possession, or cultivation of medical marijuana." *McIntosh*, 833 F.3d at 1176; *see also United States v. Bilodeau*, 24 F.4th 705, 712-13 (1st Cir. 2022).

Relying on the Amendment's text and the interpretation above, the government argues that Plaintiffs cannot succeed because there are no allegations that Defendants' spending precludes (or would preclude) Florida from giving practical effect to its medical marijuana laws. ECF No. 14 at 43-46; ECF No. 16 at 18-19. The government further explains that spending to enforce § 922(d)(3) and (g)(3) wouldn't prevent Florida from giving practical effect to its medical marijuana laws because prosecution under those provisions does not stop Floridians from using medical marijuana. ECF No. 14 at 43-44. I agree that the Rohrabacher-Farr Amendment's language precludes Plaintiffs' claim.

To see why Plaintiffs have not stated a claim, it helps to consider how the rider fits into the "the overall statutory scheme for marijuana regulation, namely the [Controlled Substances Act] and the State Medical Marijuana Laws." *McIntosh*, 833 F.3d at 1176. At best, the Amendment limits the DOJ's ability to prosecute individuals under the Controlled Substances Act. That is because the actions that the CSA criminalizes—using, distributing, possessing, or cultivating marijuana—are the actions State medical marijuana laws purport to "authorize." *See* 21 U.S.C.

20

§§ 841(a), 844(a); *see also* Consolidated Appropriations Act, 2022, § 531, 136 Stat. at 150-51 (no funds used to "prevent [states] from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana"). Prosecuting users for the precise conduct the state wishes to allow would arguably "prevent" states from "implementing" their programs. *See McIntosh*, 833 F.3d at 1177. But prosecuting users for committing other crimes—even if it has some ancillary effect—is not preventing implementation.

To be sure, potential prosecution under § 922(g)(3) might give pause to those, like Franklin, who own firearms but would like to use marijuana. But this ancillary deterrent effect does not keep Florida from implementing its medical marijuana laws.[11] Plaintiffs have therefore not plausibly alleged that Defendants' enforcement of § 922(d)(3) and (g)(3) would violate the Rohrabacher-Farr Amendment. So Counts III and IV must be dismissed.[12]

---

[11] The government points to *In re Great Lakes Cultivation, LLC*, 2022 WL 3569586, at *5-8 (E.D. Mich. Aug. 18, 2022), in which the district court upheld the dismissal of a medical marijuana business's bankruptcy case because the bankruptcy trustee couldn't lawfully administer the business's assets. *Great Lakes Cultivation* rejected the business's argument that dismissing the bankruptcy case amounted to a violation of the Rohrabacher-Farr Amendment. It found based on the rider's plain language, "[n]othing about a motion to dismiss a bankruptcy case, even a motion filed by the United States Trustee, prevents states from implementing state laws to legalize medical marijuana." *Id.* at *8. I find this nonbinding authority persuasive.

[12] To the extent Plaintiffs' Rohrabacher-Farr claim relates to the ATF's use of the form or to enforcement against gun dealers, the result is the same.

## CONCLUSION

As a matter of law, enforcement of the challenged laws does not violate the Second Amendment or the Rohrabacher-Farr Amendment. The government's motion to dismiss (ECF No. 13) is GRANTED, and Plaintiffs' claims are DISMISSED. I need not reach the government's alternative request for summary judgment, and I have not considered the scholarly articles and other materials the government submitted in support of that alternative request.

The clerk will enter a judgment that says, "Plaintiffs' claims are dismissed on the merits for failure to state a claim." The clerk will then close the file.

SO ORDERED on November 4, 2022.

s/ *Allen Winsor*
United States District Judge